In re Robert McELRATH, Appellant.

In re Wilfred M. OKA, Appellant.

In re Myer C. SYMONDS, Appellant.

In re Harold GLASSER, Appellant.

Nos. 13787 and 13808, 13788 and 13809, 13789 and 13810, 13790 and 13811.

United States Court of Appeals
District of Columbia Circuit.

Argued May 20, 1957.

Decided July 5, 1957.

Mr. David Rein, Washington, D. C., for appellants McElrath, Oka and Symonds.

Mr. Joseph Forer, Washington, D. C., for appellant Glasser.

Mr. J. G. Sourwine for the Committee on the Judiciary of the United States Senate and the Internal Security Subcommittee of the United States Senate.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting *in banc.*

EDGERTON, Chief Judge, with whom Judges Bazelon, Fahy and Washington, concur.

These cases involve an Act of Congress which provides that in certain circumstances a witness may be granted immunity from prosecution and may then be required to give testimony that would otherwise incriminate him. 18 U.S.C. (Supp. IV) § 3486, 68 Stat. 745, Act of August 20, 1954. The Supreme Court has applied subsection (c) of this Act, which deals with witnesses before a court or a grand jury. Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511.[1] We are concerned with subsections (a) and (b) of the Act, which deal with witnesses before Congress or a congressional committee.

Subsection (a) provides that "In the course of any investigation relating to any interference with or endangering of, or any plans or attempts to interfere with or endanger the national security or defense of the United States by treason, sabotage, espionage, sedition, seditious conspiracy or the overthrow of its Government by force or violence, no witness shall be excused from testifying * * * before either House, or before any committee of either House * * * on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture, when the record shows * * * (2) in the case of proceedings before a committee, that two-thirds of the members of the full committee * * * have authorized such witness to be

---

1. Ullmann had appeared as a witness before a grand jury, had refused to testify, and had invoked the privilege against self-incrimination.

granted immunity under this section with respect to the transactions, matters, or things concerning which he is compelled, after having claimed his privilege against self-incrimination to testify or produce evidence by direction of the presiding officer and that an order of the United States district court * * has been entered into the record requiring said person to testify or produce evidence. Such an order may be issued * * * upon application by a duly authorized representative of * * * the committee concerned. But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is so compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecutions described in subsection (d) hereof) against him in any court." Subsection (d) relates to prosecutions for perjury or contempt.

Subsection (b) provides that "Neither House nor any committee thereof * * shall grant immunity to any witness without first having notified the Attorney General of the United States of such action and thereafter having secured the approval of the United States district court for the district wherein such inquiry is being held. The Attorney General of the United States shall be notified of the time of each proposed application to the United States district court and shall be given the opportunity to be heard with respect thereto prior to the entrance into the record of the order of the district court."

A representative of the Senate Committee on the Judiciary and of its Internal Security Subcommittee made applications to the United States District Court for the District of Columbia for orders requiring the present appellants to "testify or produce evidence before the Internal Security Subcommittee at a time and place to be designated by the Committee." These applications say: "Pursuant to its authority and jurisdiction, the said Internal Security Subcommittee is in the course of an investigation relating to the interference with or endangering of, or any plans to interfere with or endanger the national security or defense of the United States by treason, sabotage, espionage, sedition, seditious conspiracy or the overthrow of its government by force and violence, which investigation is being carried on in the District of Columbia * * *." This follows the language of the statute. The applications say no more about the pending investigation or the Subcommittee's authority to undertake it. They say that the full Committee on the Judiciary, by a two-thirds vote, has authorized each appellant to be granted immunity "with respect to the transactions, matters, and things concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence by direction of the presiding officer." But the applications do not say, and the record does not show, that the appellants have claimed their privilege, or have refused to testify, or have been, or even that they will be, called as witnesses. The full Committee's resolutions say that the Subcommittee "has reason to believe [each] individual aforesaid may refuse to testify or give evidence, claiming his privilege against self-incrimination * * *." and that the "Subcommittee is of the opinion and belief that the importance to the investigation aforesaid of the testimony and evidence the said [individual] may be able to give is sufficiently great to justify a grant of immunity * * *." The record does not show why the Subcommittee believes the appellants may refuse to testify, or may claim their privilege, or may be able to give important testimony. It does not show what sort of testimony they may be able to give. It shows that the Committee told the Attorney General when the applications to the court would be made, and that he replied that he would "interpose

no objection to the issuance of an order by the United States District Court for the District of Columbia in this matter."

Counsel entered appearances for appellants in the District Court, but the District Court ordered the appearances vacated on the ground that the statute "does not provide for adversary proceedings * * *." On March 20, 1957, the District Court denied motions to vacate those orders, or in the alternative to permit the appellants to intervene as defendants, on the ground that they had "no justiciable interest". On April 10 the District Court entered orders which "approved" the several applications of the Senate Committee (one concerning each of the present appellants); recited that the Committee had authorized grants of immunity and that the Attorney General had interposed no objection; and ordered each of the appellants to "appear as a witness before the said Internal Security Subcommittee at a time and place to be designated by the said Subcommittee, and then and there testify or produce evidence as lawfully required by the said Subcommittee." These appeals are from the orders of March 20 and April 10.

■ The Act of Congress provides that "no witness" shall be excused from testifying when it appears, among other things, that two-thirds of the members of a committee have authorized "such witness" to be granted immunity. These appellants are not witnesses. The Act does not authorize grants of immunity to persons who are not witnesses but may in the future become witnesses, may refuse to testify, and may claim their privilege. Nothing in the Act suggests that Congress meant to authorize grants of unlimited immunity to possible witnesses in exchange for undescribed evidence of undisclosed value in unidentified investigations. The committee report on the bill in the House of Representatives makes it clear that Congress had no such intention. The report says: "The power to grant immunity is one of tremendous responsibility, the exercise of which must be guarded by discretion and wisdom. All possibility of abuse must be obviated lest it become a loophole for the escape from punishment for the guilty. It must at all times be the perfect medium whereby a true balance [is struck] between the need and right of the Government to obtain the necessary information to carry out its constitutional functions and the constitutional right of an individual not to incriminate himself. * * * *First,* in all instances where a grant of immunity is authorized *the witness himself must claim his privilege against self-incrimination; thus* the committee and the Attorney General are immediately put on notice that a serious and important decision has been placed upon them. There is *then* the opportunity to acquire the necessary background and facts upon which to predicate a wise decision as to whether or not immunity should be granted. If the matter be one involving the Congress, *then,* in the case of either House a majority of those present, or in the case of a congressional committee, two-thirds of the full committee, must by an affirmative vote authorize *that immunity be granted to the witness who has claimed his privilege. Then* the Attorney General must be notified before the approval of a United States district court is sought for the proposed grant of immunity. That provision will permit the Attorney General to present to the court either his assent or opposition to the proposed grants. Finally, before the immunity is actually granted to the witness, the approval of the United States district court wherein the inquiry is being conducted is to be obtained. * * * " (Emphasis added.) H.R.Rep. No. 2606, 83d Cong., 2d Sess. 5, 8 (1954).

The restrictions Congress imposed on the granting of immunity are highly practical. As the Committee's representative himself says in his brief, "The Committee may decide not to call appellants, or any one of them, as witnesses; or if they are called as witnesses, it may never question them concerning activi-

ties as to which they might desire to invoke their privilege against self-incrimination under the Fifth Amendment * * *." And even if appellants are called and questioned and unwilling to testify, they may, like many others, decline because of pride or policy or conscience to claim their privilege. Until a witness has been called, has refused to testify, and has claimed his privilege, it would be contrary to the manifest intention of Congress to set in motion the legislative, executive and judicial machinery the statute creates. The orders of April 10 requiring appellants to testify are invalid because premature.

The court erred also in not allowing appellants to intervene as defendants. Orders against them were sought and obtained. If they had been valid, these orders might have compelled them to make disclosures that would have injured their reputations and so their economic and social interests. The law does not ignore such injuries. Appellants were squarely within Rule 24(a) of the Federal Rules of Civil Procedure [28 U.S.C.]: *"Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: * * * when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action * * *." The orders of March 20 are therefore reversed.

Because the District Court failed to permit intervention, it would be permissible for this court to refuse to rule, even favorably to the appellants, on the validity of the orders requiring them to testify. But in the circumstances of this case, refusal to rule would serve no useful purpose and would cause delays which all concerned are anxious to avoid. In reversing a judgment, we "may remand the cause and direct the entry of such appropriate judgment * * * as may be just under the circumstances." 28 U.S.C. § 2106, 62 Stat. 963. The orders of April 10 are therefore set aside and the proceedings are remanded to the District Court with instructions to dismiss the Committee's applications as premature.

We imply no opinion concerning the constitutionality of subsections (a) and (b) of the Act.

Nos. 13787, 13788, 13789 and 13790 reversed.

Nos. 13808, 13809, 13810 and 13811 remanded.

BURGER, Circuit Judge, with whom Judges Wilbur K. Miller, Danaher and Bastian, concur.

No member of this court doubts that an application to the court is not authorized by 18 U.S.C. § 3486(a) until after a witness has appeared and refused to answer questions of the Committee. The language and plain scheme of the statute as well as the legislative history demonstrate this. However, we would not treat this question in the posture of reviewing the April 10 orders of the District Court directing appellants to appear and testify. We should avoid any implication that we have passed sub silentio upon the important issue whether such an order under 18 U.S.C. § 3486 (a) is appealable. Compare Cobbledick v. United States, 1940, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783, with Ellis v. I. C. C., 1915, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036. See Parr v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L. Ed.2d 1442. We would limit our consideration to the March 20 orders which denied intervention and thus allow our disposition of the appeals from the March 20 orders to render moot the appeals from the orders directing appellants to give testimony.

It is essential to the interests of orderly judicial administration that we pass on the issue of the right of the appellants to intervene, notwithstanding a holding that this particular proceeding was prematurely instituted.

It is the position of counsel for the Committee (a) that the court's function under the statute is limited to an examination of the procedural preliminaries, *i. e.,* whether two-thirds of the full Com-

mittee membership has authorized the application, whether the Attorney General has been notified, (b) that the court is bound to grant the application, *i. e.*, has no discretion, provided it finds the statutory steps have been met.

In Ullmann v. United States, 1956, 350 U.S. 422, 76 S.Ct. 497, 1 L.Ed.2d 511, the Supreme Court was not called upon to decide whether a witness had a right to intervene because in that case the District Court had allowed such intervention and the witness was heard.

■ We go beyond the companion opinion and hold that the witness should be given reasonable notice of the application, be allowed to appear in the proceeding and be heard on the following: (1) whether the Committee was a Committee of the current session of Congress purporting to exercise powers duly conferred upon it; (2) whether the witness recently and at least during the current session of Congress declined on the grounds of the privilege against self-incrimination, to answer questions asserted by said Committee to be within the scope of Title 18, Section 3486(a); (3) whether the Attorney General of the United States was given notice pursuant to the statute; (4) whether the Committee by the prescribed two-thirds vote authorized the application to the District Court for a grant of immunity to the witness after having claimed his privilege; (5) whether the application is made to the District Court for the district wherein such inquiry of the Committee is being conducted.

The discretion of the District Court is limited at this stage to a determination of the procedural regularity of an application and does not embrace such issues as the scope of the inquiry of the Committee, the pertinency and relevancy of the questions propounded or the constitutionality of the statute.

All of the issues as to which this construction of the statute limits the intervenor-witness in the District Court proceedings are points which can be raised by the witness when, as, and if he thereafter: (1) appears, being required to testify, (2) is then asked but declines to answer questions as to which he asserts his privilege againt self-incrimination (3) and is thereafter cited, indicted and brought to trial for contempt. "Whatever right he may have requires no further protection in either case than that afforded by the district court *until the witness chooses to disobey and is committed for contempt.*" Cobbledick v. United States, supra, 309 U.S. at page 328, 60 S.Ct. at page 542. (Emphasis added.)

We need not reach the other questions, including constitutionality, raised by appellants.[1]

We would, therefore, (1) reverse the orders denying intervention and remand cases Nos. 13,787, 13,788, 13,789 and 13,790 to the District Court with instructions to dismiss the proceedings as prematurely commenced, and (2) vacate the orders in cases Nos. 13,808, 13,809, 13,-810 and 13,811 and dismiss the appeals as moot.

---

1. "The impressive lesson of history confirms the wisdom of the repeated enunciation, the variously expressed admonition, of self-imposed inhibition against passing on the validity of an Act of Congress 'unless absolutely necessary to a decision of the case.' * * * *

　*　*　*　*　*

"Refusal to anticipate constitutional questions is peculiarly appropriate in the circumstances of this case. First of all, these questions come to us unillumined by the consideration of a single judge—we are asked to decide them in the first in-

stance. Again, only an adjudication on the merits can provide the concrete factual setting that sharpens the deliberative process especially demanded for constitutional decision. Finally, by remanding the case for trial it may well be that the Court will not be called upon to pass on the questions now raised. * * *" United States v. International Union United Automobile, Aircraft and Agricultural Implement Workers of America (UAW–CIO), 352 U.S. 567, 77 S.Ct. 529, 540, 1 L.Ed.2d 563.

PRETTYMAN, Circuit Judge (concurring).

I concur in Chief Judge Edgerton's opinion in respect to the prematurity of the application to the District Court, and in the result reached by him; and I concur in Judge Burger's opinion in respect to the right of intervention.