**In re Philip BART, Appellant.**

**Nos. 16892, 16893.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 17, 1962.

Decided June 7, 1962.

Mr. Joseph Forer, Washington, D. C., for appellant.

Mr. David C. Acheson, U. S. Atty., with whom Mr. Benjamin C. Flannagan, Atty., Dept. of Justice, was on the brief, for appellee. Messrs. Charles T. Duncan, Prin. Asst. U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., also entered appearances for appellee.

Before EDGERTON, BURGER and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge.

These appeals tender several important questions under 18 U.S.C. § 3486, sometimes called the Immunity Act of 1954, but perhaps more appropriately labeled the Compulsory Testimony Act.[1] After refusal to answer certain questions propounded by the grand jury relating to his own status as an officer of the Communist Party and that of others, the cited statute was invoked against appellant and he was ordered to testify by the District Judge.[2] Returned to the grand jury, he still refused to answer the questions. He was then taken before the judge, directed to answer, but again refused, whereupon he was committed for civil contempt.[3]

Several issues raised by appellant are no longer open. Others are premature. His First Amendment claims are foreclosed by Communist Party of United States v. Subversive etc. Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625.

---

1. See United States v. Fitzgerald, 2 Cir., 235 F.2d 453.

2. The order issued pursuant to 18 U.S.C. § 3486(c) directed appellant to answer the 35 questions set out in the government's application and "to testify and produce evidence with respect to such matters under inquiry before said grand jury."

3. Appeals have been taken from both the order compelling testimony and the contempt commitment. While the first order, standing alone, is perhaps unappealable, 28 U.S.C. § 1291, its validity is necessarily involved in determining the propriety of the commitment for contempt.

And Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, resolved against him all questions under the Self-Incrimination Clause of the Fifth Amendment. Not only does that decision uphold the compulsory grant of immunity against an unwilling witness, but it expressly rejects the argument that the immunity granted is not constitutionally sufficient. Holding that "the Immunity Act protects a witness who is compelled to answer to the extent of his constitutional immunity," and that "the Fifth Amendment operates only where a witness is asked * * * to give testimony which may possibly expose him to a *criminal charge*," the Court concluded that the only remaining question is whether the penalty in any given case "is criminal in nature," which inquiry should be postponed to the time "when a particular sanction is sought to be imposed." Id., at 431, 76 S.Ct. at 502 (emphasis added). Accordingly, we should not now characterize the disabilities attached to officership in the Communist Party[4] and attempt to determine whether the immunity conferred on appellant shields him from them in the event his answers to the questions propounded show him to be an officer of the Party. Even less should we now consider, assuming Ullmann left the question open, whether the Due Process Clause of the Fifth Amendment prevents the imposition of these sanctions, if its Self-Incrimination Clause does not.

But if Ullmann resolved doubts concerning the constitutionality of the Immunity Act, it did not settle certain fundamental questions of procedure which plague us here. They all relate to the manner in which the government's application for an order compelling testimony before the grand jury should be handled. Among them are: What should the application recite?[5] Must it be verified?[6] May the initial application be presented to the court ex parte? If an adversary proceeding is contemplated, what notice[7] and what form of hearing[8] are required? And, most important, what is the judge's role in passing on these applications?[9]

We approach these questions with two considerations in mind. First, we must note the expressed intent of Congress to protect the public from wholesale "immunity baths." While recognizing the practical utility of granting immunity to obtain necessary evidence in certain cases, the drafters of the Act wanted to make sure it would not be abused "lest it become a loophole for the escape from punishment for the guilty."[10] And, at the same time, we must assume that Congress did not forget the witness who, in derogation of his right otherwise to

4. See 50 U.S.C.A. §§ 784, 785, 789, 790.

5. Here the appellant complains that the government's application merely recited the questions propounded and broadly alleged that the grand jury was investigating "violations of the Internal Security Act of 1950," without even pinpointing the sections of the Act involved or alleging that the offenses were such as to "interfere with or endanger * * * the national security or defense," much less stating facts which might justify such a finding by the judge.

6. The application in suit was not verified. Nor was an affidavit attached.

7. Appellant and his attorneys in this case were sent copies of the application (without the Attorney General's letter attached), and were notified of the time and place of the hearing to be held thereon.

But the claim is that the notice was insufficient under F.R.Civ.P., Rule 6(d), 28 U.S.C.A.

8. The hearing below was perfunctory. Being of the opinion that no adversary proceeding was required, the District Judge merely permitted appellant's attorney to present brief oral argument in opposition to the government's application "as a matter of courtesy."

9. Here the District Judge treated his function as a ministerial one. Having found the papers in order, he signed the application without purporting to make any finding.

10. See H.Report No. 2606, 83rd Cong., 2d Sess., in 2 U.S.Code Cong. & Adm.News, 83rd Cong., 2d Sess., 1954, p. 3062. See also, id., pp. 3059, 3064, 3065.

stand mute, is compelled to testify. Only the strongest circumstances can justify compelling a confession of crime. Especially so, when that admission involves not only the odium attached to guilt but also civil and economic disabilities which the grant of immunity probably cannot erase.[11]

■ These are not competing considerations. For once, no balancing of interests is required. Here the interest of the individual on whom the statute bears and the interest of the public at large coincide. Both counsel a strict construction of the statute and suggest that it should be applied only after the necessity for so doing has been established.

Thus informed, we examine the statute. In pertinent part, the Immunity Act provides:

"Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any interference with or endangering of, or any plans or attempts to interfere with or endanger, the national security or defense of the United States by treason, sabotage, espionage, sedition, seditious conspiracy, violations of chapter 115 of title 18 of the United States Code, violations of the Internal Security Act of 1950 (64 Stat. 987), violations of the Atomic Energy Act of 1946 (60 Stat. 755), as amended, violations of sections 212(a) (27), (28), (29) or 241(a) (6), (7) or 313(a) of the Immigration and Na-

tionality Act (66 Stat. 182–186; 204–206; 240–241), and conspiracies involving any of the foregoing, is necessary to the public interest, he, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify * * *."

■ We note first that the Act is to be applied only if the testimony of the witness is, *"in the judgment of a United States attorney * * * necessary to the public interest."* This is, of course, an important limitation, especially when coupled with the required "approval of the Attorney General." But it does not address itself to the Judiciary. The application should say, explicitly, that such is the opinion of the United States Attorney and show the Attorney General's concurrence,[12] but, having stated their conclusion, the government's attorneys need not justify it. The court cannot review their judgment in this regard. So much is definitively settled by Ullmann v. United States, supra, 431–434, 76 S.Ct. 497, 100 L.Ed. 511.

■ But there is a more serious limitation on the application of the statute. It is set out in the intervening language. Testimony can be compelled and immunity can be given only in a proceeding "involving [planned, attempted, or actual] *interference with or endangering of * * * the national security or defense"* by specified criminal acts, including violations of the Internal Security Act of 1950. A careful reading shows clearly that two requirements are announced here: (1) The matter under investigation by the grand jury must in-

---

11. While Ullmann v. United States leaves the question open, the narrow reading of the Fifth Amendment announced by the majority opinion in that case strongly suggests that it does not protect against such sanctions as ineligibility for government employment and disqualification for a passport. See 50 U.S.C.A. §§ 784, 785. Of course, it is possible that the Immunity Act goes further than is constitutionally necessary. Indeed, the statute provides not only a shield from crim-

inal prosecution, but expressly promises the witness compelled to testify that he shall not be "subjected to any penalty or forfeiture." That hope, however, is very much weakened by the apparent holding of Ullmann that the Act and the Amendment are exactly co-extensive.

12. The procedure followed here and in Ullmann, i. e., attaching to the application the Attorney General's letter approving invocation of the statute in the particular case, is clearly proper.

volve one or more of the crimes listed, and (2) the possible violation must be such as to interfere with or endanger the national security or defense. Any different construction of the text would render one or the other clause superfluous.

Clearly, Congress was intent on limiting the application of the statute to cases involving the national security or defense. But, since that is a rather flexible standard, a more precise boundary was announced. As an outer limit, it was spelled out that the Act could be invoked only where one or more of certain specified crimes was alleged. But Congress also recognized that violations of the cited provisions do not always involve the national security. Certainly, most do. Still, as the government conceded here, the nation is not imperiled by every transgression of even the Internal Security Act. With wise restraint, the Immunity Act was accordingly made applicable only when the suspected violation is or may be of such a character that it concerns the national security or defense.

■■■ It follows that the government must, in each case, allege, at least in general terms, that one of the listed offenses is under investigation by the grand jury *and that the violation threatens the national security or defense*, either presently or potentially. Nor is a mere conclusionary allegation sufficient. For, in this particular, it is the judge, not the government's attorney, who makes the judgment, and he obviously cannot decide except on the basis of facts presented.[13] Indeed, it is here that the court plays its role under the Immunity Act. The judge is not a mere automaton, performing a ritualistic act. Independently,[14] he must determine from the allegations and the evidence submitted whether there is sufficient ground to believe that the matter under investigation involves "interference with or endangering of the national security or defense."

■■ This is not to say that the application need describe the grand jury's investigation in great detail, or that there must be a full trial on the issue of the tendency of the alleged violation to endanger the national security, or that the District Judge should make a definitive finding. On the contrary, the whole proceeding is by its nature preliminary and summary. Not until the grand jury completes hearing all the witnesses, including those whose testimony is compelled under immunity, can anyone predict the outcome of the inquiry. Indeed, even where an indictment is returned there is no *finding* of guilt but only a charge. By approving the application the judge merely signifies his considered judgment that a sufficient showing has been made to warrant the conclusion that the grand jury's investigation involves matters closely related to the national security or defense. His finding is preliminary and tentative. It may well turn out that there was smoke without a fire. But the failure of the investigation does not vitiate the order. Just as a search warrant is not invalidated because ultimately nothing is turned up, so the validity of an order compelling testimony under the Immunity Act does not depend upon the eventual success of the grand jury probe. In both cases, it suffices if, at the time of granting the application, the facts presented give reasonable cause to believe that the statutory standard has been met. We cannot demand that the government establish or the court find the very facts the grand jury has yet to consider.

13. "The court *in reaching its decision* will have the aid of the views *and facts* of both the [United States Attorney] and the Attorney General." H.Report No. 2606, supra, at page 3065 (emphasis added).

14. As the House Report puts it, the judge is one of the "two other independent but interested parties [besides the United States Attorney] who must concur in the grant of immunity in order to meet the requirements of the bill." H.Report No. 2606, supra, at page 3065.

While the witness is entitled to notice and must be given an opportunity to be heard before being compelled to testify,[15] the full panoply of trial is not appropriate. Normally, the application and supporting documents should be served in accordance with the Rules. F.R.Civ.P., Rules 5(a), (b), 6(d). But, for good cause shown, the court may shorten the period of notice or vary its form. See F.R.Civ.P., Rule 6(d). And the hearing will, in any event, be restricted to narrow issues. Just as in the case of applications for temporary injunctions, there will usually be no occasion for live testimony in support of the application. With the rare exception noted below,[16] grand jurors will not be called upon to· disclose the proceedings before them. The issue whether the matter under investigation by the grand jury involves a threat to the national security or defense will normally be left to argument. It is the government's burden to persuade the court on this point and, although the witness must be permitted to testify if he desires to, about all he can effectively do, ordinarily, is argue the insufficiency of the District Attorney's presentation. The hearing is primarily intended to afford the witness an opportunity to point out formal defects in the application or the government's failure to comply with the necessary preliminaries.[17] It will be time enough, later, to object to the relevancy of the questions asked.[18]

As to the required extent of the government's presentation, we can lay down no very precise rules applicable to all cases. Suffice it to say that, in addition to stating their own opinion that the grand jury probe affects the national security, government counsel must describe the subject matter of the investigation with enough particularity to enable the judge to determine for himself whether any danger to the national security or defense is involved. Yet, at the same time, they must be careful to respect the secrecy of the grand jury's proceedings.[19] In the usual case, given the Congressional declaration that certain activities threaten the nation's security, a very brief description will do.[20] Others matters, less clearly connected with the national security, may require more.

One last point should be settled. However summary the proceeding and tentative the finding, the court's ruling should rest on a sworn statement. See Ullmann v. United States, supra, 350 U.S. at 425, 76 S.Ct. 497, 100 L.Ed. 511. The judgment is based on facts and those facts should be presented to the court in proper form, even if only on information and belief. See F.R.Civ.P., Rule 43(e). It is, of course, immaterial whether the facts relied on are recited in a verified application or in an attached affidavit.

15. See In re McElrath, 101 U.S.App.D.C. 290, 248 F.2d 612.

16. See Note 17, infra.

17. The government, of course, cannot apply for an order under the Immunity Act until after the witness has refused to testify before the grand jury on the ground of self-incrimination. In re McElrath, supra. Accordingly, the witness is entitled to object to the granting of the application if he has not yet been called upon to answer the grand jury's questions, or did not refuse to answer them, or refused without invoking the Fifth Amendment. On these points, the testimony of the foreman of the grand jury may be appropriate, if those issues are raised by the witness.

18. The witness will, of course, have an opportunity to be heard, with the assistance of counsel, before he is punished for contempt. The proper time to object to the relevancy of the questions propounded is when the witness is summoned before the court for failure to comply with the order compelling testimony.

19. This consideration forbids disclosure of the names of persons under investigation by the grand jury. Secrecy in this particular shields the suspect and, at the same time, protects the investigation.

20. Here, for instance, it might have been sufficient to show that the grand jury was investigating the failure of officers of the Communist Party to register and was attempting to learn their identity.

As already noted,[21] the government's application in this case does not conform to the standard announced here. Nor did the District Judge fulfill his required function under the Immunity Act.[22] Accordingly, the order compelling appellant's testimony and the contempt commitment based thereon must be vacated.

It is so ordered.

21. See Notes 5, 6 and 9, supra. The application in Ullmann, supra, in which the Supreme Court affirmed a commitment under the Act, conformed to the standard announced here. Why the Bart application failed to follow the language of the statute or the application in Ullman is not disclosed.

22. His failure so to do is understandable in view of the absence of previously announced procedural guideposts.