**UNITED STATES of America,**
**Plaintiff and Appellee,**

**v.**

**Ross John Di MAURO, Defendant and**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff and Appellee,**

**v.**

**Donald Veryl JONES, Defendant and**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff and Appellee,**

**v.**

**Nicholas SIRIAN, Defendant and**
**Appellant.**

Nos. 20295, 20384, and 20297.

United States Court of Appeals,
Eighth Circuit.

April 12, 1971.

John J. Higgins, Jr., J. Patrick Green, J. Thomas Rowen, Omaha, Neb., for defendant-appellant Di Mauro.

S. J. Albracht, Omaha, Neb., for defendant-appellant Jones.

David L. Herzog, Omaha, Neb., for defendant-appellant Sirian.

Richard A. Dier, U. S. Atty., District of Neb., William K. Schaphorst, Asst. U. S. Atty., for appellee.

Before VAN OOSTERHOUT, GIBSON and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

The defendants, Ross John Di Mauro, Donald Veryl Jones and Nicholas Sirian, appeal from judgments of conviction rendered against them in the District of Nebraska for criminal contempt pursuant to 18 U.S.C. § 401(3)[1] and Rule 42(b), Fed. R.Crim.P.[2] The contempt charges were tried to a jury pursuant to an information filed by the United States Attorney at the direction of the trial court, and a verdict of guilty was returned. The circumstances leading to the contempt conviction were as follows.

A grand jury was empanelled in Omaha, Nebraska, on January 7, 1969, for the purpose of investigating crimes relating to 18 U.S.C. §§ 1084 (transmission of wagering information), 1952 (travel or transportation in aid of racketeering enterprises), and 371 (conspiring). Defendants Di Mauro, Sirian, and Jones, were subpoenaed to appear before the grand jury and each appeared at various times. Each refused to answer questions put to him by the United States Attorney, relying on his privilege against self-incrimination. The United States Attorney then brought the defendants before the District Court and requested that they be cited for contempt, alleging they had been granted immunity pursuant to 18 U.S.C. § 2514.[3]

1. 18 U.S.C. § 401 provides in pertinent part:
   "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

   *     *     *     *     *

   "(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

2. Rule 42(b) Fed.R.Crim.P. provides as follows:
   "A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United

States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

3. 18 U.S.C. § 2514 provides as follows:
   "Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516,

■ Initially the trial judge accepted the Government's position, but subsequently ruled, properly, that the defendants could not be adjudged in contempt of court for the reason that they had not actually been granted immunity under § 2514, since that section requires an application to the court and a judicial grant of immunity with an accompanying order to testify, and therefore that they had properly invoked their privilege against self-incrimination.

Thereupon, the Court treated the Government's motion as an application for a grant of immunity and order to testify. The immunity was granted and the orders given. The defendants were returned to the grand jury, where they continued their refusal to testify. The Government then requested that the court find them in civil contempt or in the alternative cite them for criminal contempt.

The trial court specifically rejected the civil contempt alternative, stating that it viewed the matter as much more serious than that. The defendants' conduct had seriously impeded the grand jury's investigation, they had had the constant advice of experienced counsel and had still persisted in refusing to obey the court's order, and if they had a sufficient explanation for their conduct it could be better made to a jury rather than the court alone. The court therefore directed the Government to file an information against the defendants, which was done. The jury trial and conviction then followed.

Upon entering the judgment of conviction, the court sentenced each of the defendants to three years imprisonment. It then commented that counsel was well aware of Rule 35, Fed.R.Crim.P., and that if the defendants chose to testify prior to the discharge of the grand jury or the expiration of the 120-day period of Rule 35, it would take that factor into account in a motion to reduce sentence under that rule. The defendants subsequently all testified before the grand jury, and their sentences were reduced to three years probation.

At the outset, we are confronted with the question of whether these contempt citations comport with the principles laid down by the Supreme Court in Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). There are two questions raised by the application of *Shillitani* to this case which may be phrased in the alternative. 1.) Was the proceeding one for civil contempt because its primary purpose was to coerce testimony before the grand jury, hence requiring unconditional release of the defendants now because the term of the grand jury has expired? 2.) In the alternative, if the proceedings are for criminal contempt, are they void because they violate the "least possible power" rule, in that the trial court did not first resort to civil sanctions before invoking the criminal sanction?

■ We feel that the conclusion is unavoidable in this case that the convictions were for criminal contempt. It is true that the Supreme Court in *Shilli-*

---

or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture.

No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

*tani* stated the test for distinguishing civil from criminal contempt as: "what does the court primarily seek to accomplish by imposing sentence? Here the purpose was to obtain answers for the grand jury." 384 U.S. at 370, 86 S.Ct. at 1535. However, that test was necessary in that case because there were indicia of both civil and criminal proceedings in the sanctions imposed. Therefore, prior to reaching the main substantive issue in that case—whether the defendants had the right to a jury trial—the court had to determine what kind of contempt it was dealing with. In the instant case, however, there are significant differences in the procedures followed from those in the *Shillitani* case, which clearly mark it a criminal contempt in character and make resort to the "purpose" test (in order to classify the contempt) unnecessary.

The most important difference is that, in contrast to the defendants in *Shillitani,* the defendants here received a jury trial to determine their guilt. This is obviously the mark of a criminal contempt conviction. *See* Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). In addition, the sentences given in this case were unconditional. They contained no purge clause, as did the sentences in *Shillitani,* and of course, the defendants' subsequent compliance with the court's order in testifying before the grand jury did not result in their unconditional release. This also marks the conviction as being for criminal contempt.

It is also pertinent to note that the record clearly reflects the trial court's intention that this proceeding be for criminal contempt. The court expressly recognized the option of proceeding in civil contempt and just as expressly rejected that alternative, stating:

"By way of civil contempt and in aid of the Court's implementing and carrying out of its orders may commit a defendant to jail until he answers the question.

"* * * [U]nder the circumstances the defendant himself held the keys to the jail and could release himself upon responding to the order of the court. *"I have chosen not to do that in this case * * *."*

"* * * [T]he Court is now directing the United States Attorney to file criminal contempt charges against the defendants under Rule 42(b) of the Federal Rules of Criminal Procedure." (emphasis added.)

As noted above, the Government filed an information against the defendants expressly designating the charges as criminal contempt under Rule 42(b). This also supports the conclusion that the proceedings were for criminal contempt, as the committee notes to Rule 42(b) indicate:

"The requirement in the second sentence that the notice shall describe the criminal contempt as such is intended to obviate the frequent confusion between criminal and civil contempt proceedings * * *."

The basis of the defendants' argument that this proceeding must be viewed as civil, rather than criminal contempt, is the trial court's remark that if the defendants did in fact testify, it would consider that in a motion to reduce sentence, and that the sentences were in fact reduced from imprisonment to probation when compliance followed the convictions. We cannot accept the argument that this converts the proceedings to civil contempt. The logical result of accepting this argument would be either that a trial court could never consider ultimate compliance with its order as a factor justifying mitigation of a criminal contempt conviction, an extremely harsh result without any reasonable justification, or that criminal contempt sanctions can never be imposed for violation of a court order where compliance is still possible. This latter result appears to be the one actually contended for by the defendants, and it is to this issue that we now turn our attention.

■ The defendants argue that the criminal contempt convictions are void because the trial court did not first re-

sort to a civil contempt sanction in an effort to coerce the testimony, thus violating the "least possible power" rule as enunciated in *Shillitani*. This rule was stated in footnote 9 to the Court's opinion:

> "This doctrine further requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate." 384 U.S. at 371 n. 9, 86 S.Ct. at 1536.

This question is not without considerable difficulty. However, we have concluded that *Shillitani* does not prohibit the imposition of criminal sanctions in the first instance for a contempt consisting of a refusal to testify, so long as those sanctions are surrounded by the safeguards of an ordinary criminal proceeding. (It may be noted in this respect that there are no issues raised in this case as to the conduct of the criminal contempt trial itself.)

We have been unable to discover any cases which directly discuss the question of whether *Shillitani* actually prohibits resort to criminal sanctions prior to use of the civil sanction for contempts which consist merely of refusal to obey an order to testify. However, it appears that at least two district courts have in fact so interpreted that case. In re Lazarus, 276 F.Supp. 434, 448 (C.D.Cal. 1967); and United States v. Doe, 295 F.Supp. 956 (D.Conn.), aff'd 405 F.2d 436 (2d Cir. 1968); see United States v. Pace, 371 F. 2d 810 (2d Cir. 1967), rev'g United States v. Piccolo, 295 F.Supp. 955, 956 (D.Conn.1967). On the other hand, the Sixth Circuit has held that a defendant may be convicted on a plea of guilty to a charge of criminal contempt for the refusal to testify before a grand jury. United States v. Sternman, 433 F.2d 913 (6th Cir. 1970). However, the Sixth Circuit did not confront this issue squarely in that case because the question arose in a collateral attack on the conviction by means of an appeal from the denial of a Rule 35 motion, rather than on direct appeal.

The Government relies on the following cases to support its position that criminal sanctions may be imposed in the instant case. These cases are of varying relevancy and merit careful analysis.

Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), decided the same day as *Shillitani*, affirmed a criminal contempt conviction for violation of a *pendente lite* order of the Seventh Circuit Court of Appeals. However, the contempt in that case was not "passive" as in the instant case— i.e., the mere refusal to do something which had been ordered by the court—but rather "active"—i.e., the continuation of conduct which had been specifically proscribed. The defendant was conducting a business under practices which were found to be illegal by the Federal Trade Commission. Furthermore, the defendant had severed his connections with the company originally charged by the FTC, and therefore a civil contempt sanction could have had no effect in coercing compliance with the court's decree issued against the company and its officers. Thus a criminal contempt conviction was the only possible sanction for the contumacious conduct. Further the central issue in that case was whether or not a jury trial must be offered in all cases of criminal contempt.

Yates v. United States, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957), is closer in its factual circumstances to the instant case. The defendant in *Yates* was being prosecuted for conspiracy to violate the Smith Act. While testifying in her own behalf, she refused to answer questions put by the prosecution as to the identity of other members of the Communist Party, on the grounds that to identify them would expose them to the possibility of prosecution and loss of jobs. The Supreme Court sustained a conviction of criminal contempt for this refusal to testify. However, there are two significant differences which distinguish that case from this. In the first place the witness's refusal to testify there was based

not on a personal privilege against self-incrimination, but on the tendency of the answers to incriminate others, a situation to which the Fifth Amendment does not reach. More importantly for purposes of the instant case however, the trial court there first attempted to coerce the testimony by the imposition of civil contempt and resorted to criminal contempt only when the trial ended and the witness could no longer purge herself by testifying.

In Southern Railway Company v. Lanham, 403 F.2d 119 (5th Cir. 1968), the appellate court treated the failure to produce documents as criminal contempt. The defendant railroad failed to comply with certain discovery orders of the court relating to the production of documents. The trial court proceeded summarily and held the railroad in contempt, fining it $2000; the trial court termed this conviction one for civil contempt. On appeal, the Fifth Circuit held that because of the non-conditional nature of the sentence, the conviction was one for criminal contempt, and that it was proper insofar as the underlying discovery order was proper. It then proceeded to review the discovery order on the merits and reversed that order in certain respects. The case is analogous insofar as it can be read to hold that criminal contempt may be imposed for the failure to produce evidence on a lawful order of the court without first attempting to coerce production by civil contempt. However, the court did not directly address itself to this question, and it seems that its reasons for reaching this result sprung from other considerations. Had the contempt order been construed to be civil in nature, it would be interlocutory to the party defendant and neither it nor the discovery order underlying it would have been reviewable at that stage of the litigation. 403 F.2d at 124. Apparently, the court was at least in part motivated to construe the citation as criminal in order to reach the merits of the issue. See the dissenting opinion of Chief Judge Brown in Southern Railway Company v. Lanham, 408 F.2d 348 (1969). Thus the failure of the court to directly consider the question of whether civil sanctions must first be resorted to weakens its precedential value in this case.

The cases we find to be most in point in our determination of this issue are Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), which was overruled in part in Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). The defendant in Brown had been subpoenaed to testify before a grand jury and had refused to do so, claiming his privilege against self-incrimination. After having been granted full immunity and ordered to testify, he persisted in his refusal. Thereupon the trial court summoned him before the court and with the grand jury present he repeated the questions to the defendant, and ordered him to answer; when the defendant refused, the trial court proceeded summarily under Rule 42(a), Fed. R.Crim.P., to find him in criminal contempt and sentenced him to 15 months in prison. The Supreme Court in a 5–4 decision affirmed this conviction, rejecting the contention that the defendant should have been proceeded against under Rule 42(b), so as to have afforded him a more complete hearing on the charge.

Brown was overruled on the procedural issue of using Rule 42(a) in this type of contempt instead of 42(b) in Harris v. United States, supra. The factual circumstances in the two cases were identical. However, the Supreme Court held in Harris in another 5–4 decision that where the contempt consists of a refusal to testify before a grand jury, the court must proceed under Rule 42(b) with notice and hearing to the defendant, rather than summarily under Rule 42(a). Significantly, Harris was decided the same term as Shillitani and did not suggest that the trial court must resort first to civil sanctions before proceeding under Rule 42(b). Indeed, the case suggests exactly the opposite, for the convictions were reversed and remanded for proceed-

ings under Rule 42(b). 382 U.S. at 167, 86 S.Ct. 352. Both *Brown* and *Harris* illustrate that historically the courts have had the power to punish contempts consisting of a refusal to testify by criminal sanctions without first resorting to civil sanctions. Further examples of this practice may be found in the cases cited in Justice Stewart's dissent in *Harris* at 382 U.S. 171 n. 11, 86 S.Ct. 352.

We do not think that a fair reading of *Shillitani* requires the conclusion that it was intended to take away this historical power of the courts. As noted above, *Shillitani* was decided the same term as *Harris,* although the *Harris* case was not referred to in that opinion. However, the Court did recognize the importance to the judicial process of the power to compel testimony:

> " * * * [I]t is essential that courts be able to compel the appearance and testimony of witnesses. United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). A grand jury subpoena must command the same respect. Cf. Levine v. United States, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 14 L.Ed.2d 989 (1960)." 384 U.S. at 370, 86 S.Ct. at 1535.

The citation of the *Bryan* and *Levine* cases with apparent approval is especially significant because both were cases of criminal contempt convictions imposed for the failure to produce evidence without prior resort to the civil contempt process.

In sum, we conclude that *Shillitani* merely requires that the trial court expressly consider the imposition of civil contempt before resorting to criminal contempt and that the record reveal that the civil alternative was considered and rejected. This will insure that the severe sanction of criminal contempt not be hastily invoked. If the civil sanction is rejected, then the court must proceed under Rule 42(b) with appropriate notice and hearing, and, if a sentence exceeding six months is contemplated, Cheff v. Schnackenberg, 384 U.S. 373,

86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), a jury trial must be permitted if requested. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). These conditions were all clearly met in the case before us.

■ We turn now to the questions involving the grants of immunity and orders to testify which are the basis of the contempt convictions. The defendants raise numerous questions relating to the technical validity of the grants of immunity under 18 U.S.C. § 2514, as well as the court's orders to testify. Prior to reaching these questions, however, we must confront the Government's argument that any question as to the validity of the Court's orders compelling testimony and granting immunity would not be grounds to set aside the contempt convictions.

For this proposition, the Government relies primarily on the doctrine enunciated in United Mine Workers v. United States, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In that case the district court had issued a temporary injunction prohibiting the defendant union from precipitating a nationwide coal miners strike. The defendants had disobeyed the injunction on the grounds that it was beyond the court's jurisdiction under the Norris-LaGuardia Act. They were found to be in criminal contempt for this disobedience. The Supreme Court affirmed their convictions, partly on the grounds that the injunction was in fact proper, but alternatively even if it was improper the defendants had the duty to obey it until it was set aside. Particularly the Government relies on the following language:

> "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, * * * or though the basic action has become moot * * *." 330 U.S. at 294, 67 S.Ct. at 696. (Citations omitted.)

An application of this doctrine is found in Hammond v. United States, 419 F.2d 166 (4th Cir. 1969), cert. denied, 397 U. S. 1068, 90 S.Ct. 1508, 25 L.Ed.2d 690

(1970). There the defendant had been charged with bank robbery and had been ordered by the district court to appear with counsel at a line-up. He refused and for this refusal was convicted of criminal contempt and sentenced to prison. On appeal, Hammond contended that the order violated his constitutional rights. The Fourth Circuit held that this contention, even if sound, would not constitute grounds to set aside the conviction, relying in part on the *United Mine Workers* case.

> "There is ample authority for the proposition that if a court has jurisdiction, disobedience of an order of that court subjects one to penalties for criminal contempt, even though the order may subsequently be found to have been invalid. \* \* \* Irrespective of the validity of the order, Hammond could properly be found guilty of criminal contempt upon his refusal to obey it." 419 F.2d at 168.

*See also* Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

We think this doctrine has no applicability to the instant case. Professor Wright has termed it a "rather strange doctrine" and a departure from nineteenth century precedents. 3 Wright, Federal Practice and Procedure § 702, p. 151 (1969). He also notes there are limits to the doctrine:

> "It seems to protect only orders intended to preserve the status quo, and contempt holdings have been set aside if an order calling for an affirmative act has been disregarded and is later held to have been wrongfully issued. The doctrine does not apply if 'the injunction was transparently invalid or had only a frivolous pretense to validity.' And there appears to be a limit, though its contours are not yet well marked, permitting a party to disobey a void order without being held in contempt if he has first made attempts to have the order vacated." *Id.* at 151–152 (footnotes omitted).

Several of these limitations on the doctrine appear relevant to the instant case. The orders were not intended to preserve the status quo, they required affirmative acts, and the defendants made repeated and strenuous attempts to have them vacated. But we think there is an even more significant reason for rejecting its application in the instant case, and that is that there is no other way to obtain a review of the validity of the orders themselves than in a review of the contempt conviction.

■ The orders granting immunity and ordering the defendants to testify were in and of themselves not "final orders" and hence not reviewable under 28 U.S.C. § 1291. Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906):

> " \* \* \* [S]uch an order may coerce a witness, leaving him no alternative but to obey or be punished. \* \* \* [B]ut from such a ruling it will not be contended there is an appeal. Let the court go farther and punish the witness for contempt of its order, then arises a right of review, and this is adequate for his protection without unduly impeding the progress of the case. *Id.* at 121, 26 S.Ct. at 358.

Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Dugan & McNamara, Inc. v. Clark, 170 F.2d 118 (3d Cir. 1948); In re Jaskiewicz, 362 F.2d 942 (3d Cir. 1966); In re Frank, 427 F.2d 714 (3d Cir. 1970), as explained In re Grand Jury Investigation, 317 F. Supp. 792, 794 (E.D.Pa.1970). To hold that the orders, themselves not reviewable, are sufficient to sustain a contempt conviction for their violation without regard to their validity, would be in clearest contravention of the fundamental precepts of due process. The defendants have a difficult enough time steering themselves between the Scylla of possible self-incrimination and the Charybdis of a contempt conviction for violation of a court order. We shall not barricade the exit from this passage by holding that the order cannot be reviewed.

This result is clearly mandated by the Supreme Court's language in Cobbledick v. United States, *supra*:

"Whatever right he may have requires no further protection * * * than that afforded by the district court until the witness chooses to disobey and is committed for contempt. * * At that point the witness' situation becomes so severed from the main proceeding as to permit an appeal. To be sure, this too may involve an interruption of the trial or of the investigation. But not to allow this interruption would forever preclude review of the witness' claim, for his alternatives are to abandon the claim or languish in jail." 309 U.S. at 328, 60 S.Ct. at 542.

The defendants contend that, regardless of the validity or invalidity of the court's order granting immunity and ordering them to testify, their convictions for contempt must be set aside because there was no element of wilfulness in their failure to obey the order, since they were relying in good faith on the advice of counsel. They rely primarily on In re Eskay, 122 F.2d 819, 822 n. 17 (3d Cir. 1943). We cannot accept this contention. The Ninth Circuit in United States v. Snyder, 428 F.2d 520, 522–523 (1970), cert. denied, 400 U.S. 902, 91 S. Ct. 139, 27 L.Ed.2d 139, has adequately disposed of it as follows:

"* * * [S]uch advice is no defense. Eustace v. Lynch, 9 Cir., 1935, 80 F.2d 652, 656. See also Taylor v. United States, 6 Cir., 1955, 221 F.2d 809, 810; In re Door, 1952, 90 U.S. App.D.C. 190, 195 F.2d 766, 770 n. 6; United States v. Goldfarb, 2 Cir., 1948, 167 F.2d 735. Acceptance of the rule requested by [the defendant] would in effect do away with the judicial grant of immunity because a witness given immunity could still avoid testifying if his attorney advised him to remain silent. We are not persuaded by the dictum in In re Eskay, 3 Cir., 1943, 122 F.2d 819, 822 n. 17, on which [the defendant] relies. The two cases there cited, Matthews v. Spangenberg, C.C. S.D.N.Y., 1883, 15 F. 813, and Proudfit

Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., 6 Cir., 1915, 230 F. 120, each involved good faith reliance upon counsel's advice that what the defendant did was not a violation of the court's order. Here, the advice, if given at all, was to disobey the court's order."

The defendants' next contention is that the orders to testify are invalid because the Government's application for the grants of immunity contained no showing that the grand jury investigation concerned any of the crimes specified in 18 U.S.C. § 2514.

The immunity authorized under § 2514 is not self-executing, as for example is that authorized under 47 U.S.C. § 409(*l*). It is conferred only upon an order of the court, based upon a proper application by the Government. The court may grant the immunity only upon a finding that the statutory requirements have been complied with, and this includes a finding that the grand jury inquiry is into crimes specified in the statute. Ullman v. United States, 350 U.S. 422, 434, 76 S.Ct. 497, 100 L.Ed. 511 (1956). As noted in In re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631, at 637 (1962):

"It is the government's burden to persuade the court on this point and, although the witness must be permitted to testify if he desires to, about all he can effectively do, ordinarily, is argue the insufficiency of the District Attorney's presentation. The hearing is primarily intended to afford the witness an opportunity to point out formal defects in the application or the government's failure to comply with the necessary preliminaries."

The defendants were afforded a hearing on this issue, and we think the court had before it more than sufficient information on which to base its finding that the inquiry included crimes specified in § 2516(1) (c), as to which immunity was authorized by § 2514. This information consisted of the telegram from the Assistant Attorney General which was read into the record in the presence of the witness stating that

the grand jury investigation concerned violation of 18 U.S.C. §§ 1084, 1952, and 371, all of which are crimes specified in § 2516(1) (c), and that immunity was authorized under and requested pursuant to § 2514. In addition the questions which had been asked of the witness in the grand jury proceedings were supplied to the court.[4] These questions clearly revealed that the grand jury was inquiring into crimes proscribed by 18 U.S.C. § 1084 (transmission of wagering information) and § 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises).[5] And of course, the questions themselves are proper evidence of the scope of the grand jury's investigation. Marcus v. United States, 310 F.2d 143, 148 (3d Cir. 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 933, 9 L.Ed.2d 969 (1963); United States v. Harris, 334 F.2d 460 (2d Cir. 1964), rev'd on other grounds, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). There is not the slightest suggestion in the record that the grand jury investigation was not into these crimes, and the defendants themselves appear to have suffered no misconceptions as to the character and scope of the inquiry.

■ Next the defendants contend that the application was insufficient because the authorization to seek the grant of immunity was signed by the Assistant Attorney General, whereas the statute specifies that it must be authorized by the Attorney General. 28 U.S.C. § 510 [6] authorizes the Attorney General to delegate his functions, and the actual delegation of this particular function may be found in 28 C.F.R. § 0.59.[7] This would appear to validate the procedure in this case, unless we can find some clear Congressional policy that this function was not to be delegable. We find no such policy.

The defendants argue that grants of immunity are fraught with the possibil-

---

4. The government had initially proceeded on the erroneous assumption that the grant of immunity under § 2514 was self-executing. When the witness refused to testify, he was brought before the court to be cited for contempt. At this time the questions which he had refused to answer were read to the court. The court properly concluded that the witness could not be held in contempt because he had not received a judicial grant of immunity and order to testify. The court then stated that it would treat the government's motion as an application for a grant of immunity and permitted the witness to be heard on this issue. Thus, although the government was initially in error as to the procedural aspects of § 2514, the questions were nevertheless properly before the court and could just as properly be taken into consideration in passing on the application.

5. Examples of these questions were as follows:
 "Do you now or have you ever had a federal wagering stamp?"
 "Tell us the content of all discussion of yours concerning gambling activities with Ralph Pierce of Chicago?"
 "Who do you lay off your wagers with?"
 "Describe all the gambling activities you're acquainted with in the Sarpy County, Nebraska area?"

 "Tell us what you know of any favor or gratuity ever paid or given any public official or law enforcement agent for any reason by anyone involved in gambling activities?"
 "Where do you obtain your line information?"
 "Have you ever used the telephone having number 731-1231 for gambling purposes?"

6. 28 U.S.C. § 510 provides as follows:
 "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

7. 28 C.F.R. § 0.59 provides as follows:
 "(a) The Assistant Attorney General in charge of the Criminal Division is authorized to exercise the power and authority vested in the Attorney General by sections 895 and 2514 of title 18 of the United States Code, to approve the application by a U.S. Attorney to a Federal Court for an order compelling testimony or the production of evidence by a witness * * *."

ity of misuse and that to guard against this possibility, Congress has very carefully limited the number of officials who may grant immunity; to expand this number of officials by allowing the Attorney General to delegate his authority to the Assistant Attorney General contravenes this policy. They rely primarily on Ellis v. United States, 135 U.S. App.D.C. 35, 416 F.2d 791 (1969). The *Ellis* case is wholly inapposite to the instant case and need not be discussed here. We may concede that a grant of immunity involves very sensitive considerations and is not lightly to be given. However, we are not persuaded that this function will be less carefully fulfilled by an Assistant Attorney General than by the Attorney General. Indeed, it could just as well be argued that in view of the narrower scope of his responsibility, the Assistant Attorney General in charge of the Criminal Division could give more careful consideration to these applications than could the Attorney General whose duties are more far-ranging. We conclude that this delegation is valid under 28 U.S.C. § 510. *Accord*, In re December 1968 Grand Jury, Di Domenico v. United States, 420 F.2d 1201 (7th Cir.), cert. denied, 397 U.S. 1021, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970).

The above issues are the only ones raised on behalf of the defendant Di Mauro. It follows from our discussion that his conviction must be affirmed. However, as to the defendants Jones and Sirian, there are other problems which must be discussed.

Defendant Jones contends that his conviction cannot stand because he never received a clear grant of immunity and order to testify from the court. We must conclude that the record supports this contention.

■ It is of course elementary that in order to cite a person for contempt, it must be shown that the alleged contemnor had knowledge of the order which he is said to have violated and that order must be specific and definite. In re Rubin, 378 F.2d 104, 108 (3d Cir. 1967) and cases therein cited. With respect to

testimonial orders, the Supreme Court has stated:

> "Even after an adverse ruling upon his claim of privilege, the petitioner was still guilty of no contempt. It was incumbent upon the court unequivocally to order the petitioner to answer." Brown v. United States, 359 U.S. at 50, 79 S.Ct. at 546.

In this connection, it is appropriate to note the observations of the Second Circuit as to "how easily this sort of claim of error can be obviated":

> "Upon invocation of the privilege and the court's determination that a witness should answer, the court should * * * in the clearest terms direct the witness (not merely through a statement to his attorney) to answer * *." United States v. Chandler, 380 F.2d 993, 1000 (2d Cir. 1967).

The record reveals that the following proceedings occurred as to Jones. The court held a full hearing with respect to defendant Di Mauro and then entered a clear order granting him immunity and ordering him to testify, during which time Di Mauro was present. At the conclusion of these proceedings, the Government then made a further motion as follows: "We are asking that the Court grant immunity for Mr. Donald V. Jones, *who just appeared.*" (emphasis added.) The Court then ascertained the presence of Jones and entered the appearance of counsel. The government then moved for a grant of immunity for Jones and incorporated the telegram introduced as an exhibit in the Di Mauro proceedings.. At this point, counsel for Jones protested that he and his client had not been present during the Di Mauro proceedings. The Court then ruled as follows:

> "The same order will be entered with respect to Mr. Donald V. Jones upon the application, and the Court will ask counsel to prepare an order accordingly.
>
> "Mr. Jones will be directed to appear before the Grand Jury and testify with full immunity as heretofore announced for Ross John Di Mauro."

At the contempt trial, counsel for Jones inquired of the United States Attorney whether a further order was ever prepared for Jones. The Court answered that question, stating, "An order was presented to this Court, and I said it was not necessary because I had ruled from the bench." Jones himself testified that he was not present during the proceedings as to Di Mauro and did not know what Di Mauro's order was and that no further orders were ever served on him. There is no evidence that contradicts this testimony.

So far as the record before us reveals, the ruling set out above was the only order ever made as to the defendant Jones. It is obvious that this ruling itself does not constitute a grant of immunity nor an order to testify directed to the defendant Jones. The most that can be said for the court's bench ruling is that Jones was directed to do what Di Mauro had been directed to do. It is questionable whether even if Jones had been present during the Di Mauro proceedings, this would have been an adequate and clear order as to him personally. But since he was not even present at those proceedings, he clearly could have had no notice of that order. Thus we are forced to conclude that Jones was never personally granted immunity and order to testify and thus cannot be held in contempt.

▆▆ Defendant Sirian contends that his conviction cannot stand because the order granting him immunity and ordering him to testify was given before he had appeared before the grand jury and claimed his privilege against self-incrimination. We agree with this contention.

There are no reported cases which have considered this contention as to 18 U.S.C. § 2514. However, the statute is patterned after 18 U.S.C. § 3486, and the congressional history reveals that it is intended to reflect the law as developed under that statute. 2 U.S.Code Cong. & Admin.News p. 2184 (1968). The leading case interpreting this aspect of § 3486 is In re McElrath, 101 U.S.App.D.C. 290, 248 F.2d 612 (1957). The McElrath case thoroughly reviews legislative his-

tory surrounding § 3486 and concludes that the grant of immunity cannot be given until the witness has claimed his privilege against self-incrimination. Cf. In re Bart, 113 U.S.App.D.C. 54, 304 F. 2d 631, 637 (1962).

The reasons for reaching such a conclusion are fully set out in McElrath, and need be only briefly summarized here. The statute itself requires that the United States Attorney "shall make application to the court that the witness shall be instructed to testify * * *." (emphasis added). Of course, a person under subpoena to a grand jury is not yet a witness. He becomes a witness only upon being sworn and questioned. Further, the immunity attaches only to transactions "concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify * * *." (emphasis added). The compulsion—i. e., the court's order to testify —must come after the claim of privilege. In line with the McElrath holding interpreting § 3486, the plain reading of the unequivocal language of § 2514 would compel the same result.

There are strong policy reasons underlying this requirement. Grants of immunity from prosecution for crimes are not lightly to be given, for they may well be subject to abuse. Therefore, under § 2514 they are to be given only in cases of necessity "to the public interest." But such necessity cannot be predicated merely on the fact that a person is under a subpoena.

" * * * 'The Committee [or grand jury] may decide not to call appellants, or any one of them, as witnesses; or if they are called as witnesses, it may never question them concerning activities as to which they might desire to invoke their privilege against self-incrimination under the Fifth Amendment * * *.' And even if appellants are called and questioned and unwilling to testify, they may, like many others, decline because of pride or policy or conscience to claim their privilege. Until a witness has been called, has refused to testify, and has claimed

his privilege, it would be contrary to the manifest intention of Congress to set in motion the legislative, executive and judicial machinery the statute creates." In re McElrath, 248 F.2d at 615.

*See generally*, Witnesses—Immunity from Prosecution, House Report No. 2606, 2 U.S.Code Cong. & Admin.News, pp. 3059–3071 (1954).

The judgment as to defendant Di Mauro is affirmed. The judgments as to defendants Jones and Sirian are reversed.