**In re GRAND JURY INVESTIGATION**
**Stanford Frank, a Witness.**
**Misc. No. 70–140.**

United States District Court,
E. D. Pennsylvania.
Aug. 26, 1970.

Robert Ozer, Dept. of Justice, Philadelphia, Pa., for petitioner.

Victor Wright, Philadelphia, Pa., for Stanford Frank.

## OPINION

TROUTMAN, District Judge.

Presently before the Court is a petition by the United States for an order to hold Stanford Frank, a witness, in civil contempt for refusing to obey an order of this Court granting him immunity from prosecution and directing him to answer questions propounded to him during a Grand Jury inquiry into possible violations of the Hobbs Act, 18 U.S.C. § 1951 and the Taft-Hartley Act, 29 U.S.C. § 186(b). Mr. Frank challenges the validity of this Court's original order granting the immunity and compelling him to testify. He contends that the proceedings upon which the order is based did not meet due process standards in that the procedural requirements implicit in 18 U.S.C. § 2514 were not complied with by the Government. Having carefully reviewed the record

herein, we are constrained to agree that Mr. Frank has not been afforded procedural due process.

## HISTORY OF THE PROCEEDINGS

On May 27, 1970, Stanford Frank appeared before the Federal Grand Jury in response to a subpoena duces tecum. Of the questions put to him he declined, on the basis of his privilege under the Fifth Amendment, to answer all but certain preliminary questions concerning routine matters of identification. Thereupon, he was personally handed a second subpoena directing him to reappear on Wednesday, June 10, 1970.

On Tuesday, June 9, 1970, counsel for Mr. Frank was informed by telephone by an individual who identified herself as Mr. Ozer's secretary (Robert C. Ozer, being a Department of Justice attorney handling the investigation) that Mr. Ozer planned to "immunize" Mr. Frank the following morning and that Mr. Frank should, therefore, appear in this Court on June 10, 1970, instead of reporting to the Grand Jury room. Mr. Frank's attorney eventually reached the Government attorney by telephone later the same afternoon and confirmed the foregoing. Mr. Frank's counsel then informed the government attorney of his inability at that time to contact Mr. Frank and consequently Mr. Frank did not appear on June 10. Due to Mr. Frank's absence on June 10, 1970, we continued the matter until June 11, 1970. On that date the Government proceeded to make an oral application to compel Mr. Frank to testify and to grant him immunity from prosecution for so doing pursuant to 18 U.S.C. § 2514. The United States Attorney for the Eastern District of Pennsylvania took no part in the proceedings, nor did the Government produce evidence showing that the approval of the Attorney General of the United States had been obtained. Over objections then raised by Mr. Frank's counsel we granted the immunity requested and entered an oral order directing Mr. Frank to appear and testify before the Grand Jury on June 22, 1970.

This order was subsequently reduced to writing and signed for purposes of appeal.

As no formal motion papers had been filed, the notes of testimony were transcribed and docketed for the purpose of filing a notice of appeal to the Third Circuit. On June 17, 1970, a motion for supersedeas was filed in the Court of Appeals for the Third Circuit and the Court, per curiam, held that the order was interlocutory and hence non-appealable. In re Grand Jury Investigation, Stanford Frank, a Witness, 427 F.2d 714 (3rd Cir. filed June 19, 1970).

Mr. Frank accordingly returned to the Grand Jury on Monday, June 22, 1970. However, upon advice of counsel, he again refused to testify asserting his Fifth Amendment privilege. Before he left the Grand Jury room on that day, Mr. Frank was handed a document entitled "Notice of Hearing" which purported to be notice of a hearing to be held on July 8, 1970, in this Court on a charge of civil contempt. Subsequently, this matter came before us on July 22, 1970, on a petition to show cause why Stanford Frank should not be held in civil contempt.

## DISCUSSION

The immunization proceedings in the instant case were instituted pursuant to the Congressional Authorization of 18 U.S.C. § 2514 which provides as follows:

Whenever in the judgment of a United States Attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury * * * of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence

subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section.

Although there is no separate section in the statute which defines the procedural steps to be followed in making an application for immunity, the legislative history clearly demonstrates that Section 2514 is

\* \* \* patterned after provisions in other laws which have been upheld and found effective. It is intended to reflect existing law (Ullmann v. United States, 76 S.Ct. 497, 350 U.S. 422 [100

L.Ed. 511] (1956), upholding 18 U.S.C. 3486 (1964), as amended, 18 U.S.C. § 3486(c) (Supp. 1, 1965); Reina v. United States, 81 S.Ct. 260, 364 U.S. 507 [5 L.Ed.2d 249] (1960), upholding 18 U.S.C. 1406 (1964).

(Report of the Senate Judiciary Committee on the Omnibus Crime Control and Safe Streets Act of 1968, U.S.Code Cong. & Adm.News, 90th Cong.2d Sess. 1968, Vol. 2, p. 2184.)

■ A comparison of Section 2514, Section 3486(c) and Section 1406 discloses virtually identical language although the various subject-matters of inquiry in the statutes concededly are different. The *Ullmann* and *Reina* decisions, supra, while upholding the constitutionality of Sections 3486(c) and 1406, respectively, did not specifically delineate the procedural steps to be followed in an immunization proceeding similar to the one before us. However, the legislative history· and case law regarding the above cited analogous statutes as well as the implicit meaning of the statutory language of Section 2514 itself are supportive at least of the fact that the separate, distinct and independent judgment of two officials, the United States Attorney and the Attorney General of the United States, are required before immunity can lawfully be granted.[1]

---

1. By way of analogy, the legislative history of 18 U.S.C. § 3486(c) indicates the congressional concern for procedural exactness in an immunization proceeding:

   The proposed substitute amendment provides careful and detailed procedures which obviate even the remotest possibility of an "immunity bath". First, in all instances where a grant of immunity is authorized the witness himself must claim his privilege against self-incrimination; thus the committee and the Attorney General are immediately put on notice that a serious and important decision has been placed upon them. *There is then the opportunity to acquire the necessary background and facts upon which to predicate a wise decision as to whether or not immunity should be granted.* [Emphasis added]

U.S.Code Cong. & Admin.News 83rd Cong.2d Sess.1954, Vol. 2, p. 3064.

\* \* \* \* \*

Finally, before the immunity is actually granted to the witness, the approval of the United States district court wherein the inquiry is being conducted is to be obtained. *The court in reaching its decision will have the aid of the views and facts of both the congressional committee and the Attorney General.*

The mere recital of these *required procedures* should clearly indicate that the possibility of an "immunity bath" is definitely eliminated.

In cases before a grand jury or a court, similar precaution exists. In such instances, if a *United States attorney decides* that in an authorized matter, immunity should be granted to a

■ The courts, in dealing with the procedures to be followed before a person is "immunized", have consistently required a more formal procedure than was followed in the instant case. Closest factually to the instant case is In Re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631 (1962). In the *Bart* decision a witness refused to answer thirty-five questions concerning his affiliation with the Communist Party before a Federal Grand Jury, invoking his Fifth Amendment privilege against self-incrimination. The witness was then granted immunity under the Immunity Act of 1954, 18 U.S.C. § 3486, and was returned to the Grand Jury where he again refused to testify concerning the matters under investigation. Thereafter, he was held in civil contempt. In challenging his contempt commitment on appeal the procedures by which the Government obtained the immunity and order to compel testimony were drawn in issue. In vacating the contempt citation the Court of Appeals for the District of Columbia Circuit reasoned that the interests of the individual and the public at large in the grant of immunity coincide. Both interests counsel a strict construction of the immunity statute and suggest that it should be applied only after the necessity for doing so has been established. 304 F.2d at 635. The limitations built into Section 3486 (c) are virtually identical to those contained in Section 2514 and they were considered at length in the *Bart* case. The generic limitation in both immunity statutes is that the Government's application must contain a statement by the United States Attorney that the testimony of the witness is necessary to the public interest and such must be coupled with the required approval of the Attorney General of the United States. In Re Bart, *supra*, 304 F.2d, at 634.[2] Additionally, both Section 3486(c) and Section 2514 are limited' in application to the specific cases enumerated in the statutes.[3] It follows, therefore, that "the government must, in each case, allege, at least in general terms, that one of the listed offenses is under investigation by the grand jury." In Re Bart, *supra*, at 636. Furthermore, since it is the judiciary which must determine whether such offenses are involved, a factual, rather than merely a conclusionary allegation is necessary so that the function of the judiciary may be properly fulfilled. Id. at 636. As immunity from prosecution in lieu of constitutional privilege is so important a matter, procedural fairness indicates that the application and supporting documents should be served in accordance with the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 5(a) (b), 6(d), 81(a) (3) and 7(b). Adequate notice must be afforded to the prospective witness to insure him a full and fair opportunity to point out formal defects in the Government's application. *Id.* at

---

witness who has claimed his privilege, *that prosecutor, having adjudged such testimony to be necessary in the public interest, must first obtain the approval of the Attorney General* for such grant *and then apply to the court* for the necessary instruction to the witness to testify or produce evidence. *All conditions must be complied with before the grant of immunity can be given to the witness. Id.,* at 3065. [Emphasis added]

The House Committee on the Judiciary further stated that:

Subsection (c) [of § 3486] pertains to proceedings before grand juries and courts involving interference with and endangering, the national security or defense by specifically enumerated crimes of a subversive nature. All of these said crimes are defined by statute. In such instances *if the United States attorney determines* that the testimony of a witness who has claimed his privilege is necessary to the public interest, *that prosecutor must seek the approval of the Attorney General* for a grant of immunity *and then apply to the court* for instruction for the witness to testify and produce evidence. *Id.,* p. 3066 [Emphasis added].

2. Having stated their conclusion, however, it is not the province of the Court to review their judgment, nor is it necessary that the Government's attorneys justify their conclusions in this regard. In Re Bart, *supra*, at 635.

3. Compare 18 U.S.C. § 3486 et seq. with 18 U.S.C. § 2514 et seq.

637. See also In Re McElrath, 101 U.S. App.D.C. 290, 248 F.2d 612 (1957) (construing the procedural requirements of 18 U.S.C. § 3486(a)). As a final matter, the Court in the *Bart* decision stated the following:

> One last point should be settled. However summary the proceeding and tentative the findings, *the court's ruling should rest on a sworn statement.* * * * The judgment is based on facts and those facts should be presented to the Court in proper form, even if only on information and belief. See F.R.Civ.P. Rule 43(e). [Emphasis added] 304 F.2d at 637.

In such a serious matter as compelling incriminatory statements, albeit with prosecutional immunity, we concur wholeheartedly with the well-reasoned opinion in the *Bart* decision.

In In Re Shead, 302 F.Supp. 569 (N.D. Cal.1769) the only reported case our research discloses dealing at length with the procedural aspects of 18 U.S.C. § 2514, the immunity application followed formal procedures. There the application was made and verified by the United States Attorney for the Northern District of California and stated that the witnesses refused to answer specific questions during a grand jury inquiry into matters within the purview of the immunity statute on the basis of their Fifth Amendment privilege. The application further stated that it was the judgment of the United States Attorney that the testimony of the witnesses was necessary to the public interest and such was coupled with the approval of the United States Attorney General, John N. Mitchell. The Court found that such procedural exactitude complied with the requirements of the statute. In other cases we have read more formal procedures were used in obtaining immunity than were used in this proceeding. *See e. g.* United States v. Fitzgerald, 235 F. 2d 453 (2d Cir. 1956) [§ 3486: Written application with all statutory elements averred and letter from the Attorney General attached]; In re Parker, 411 F.2d 1067 (10th Cir. 1969) [§ 2514:

petition]; Piemonte v. United States, 276 F.2d 148 (7th Cir. 1960) [§ 1406: petition]; United States v. Pappadino, 235 F.Supp. 887 (S.D.N.Y.1964) affd. 346 F.2d 5 (2d Cir. 1965) rev'd, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) [§ 1406: written application with specific District Court finding that the several requirements of the Act had been complied with]; Corona v. United States, 250 F.2d 578 (6th Cir. 1958) [§ 1406: application in writing, with specific findings by the District Court that the several requirements of the Act had been met]; In re Ullmann, 128 F.Supp. 617 (S.D.N.Y.1965), aff'd. sub nom. United States v. Ullmann, 221 F.2d 760 (2d Cir. 1955), aff'd. 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); [§ 3486: application in writing filed by the United States attorney, supported by affidavit of good faith]; In re Reina, 170 F.Supp. 592 (S.D.N.Y.1959), aff'd. sub nom. United States v. Reina, 273 F.2d 234 (2d Cir. 1959) 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) [§ 1406: application by United States attorney].

It is quite clear from the foregoing that the telephonic one-day notice and oral application in the instant case have not met the procedural requirements we have just outlined. Consequently, this Court erroneously granted this witness the requested immunity. Since our original order was in error, no civil contempt can be imposed for noncompliance therewith. See In re Bart, *supra*; Ellis v. United States, 135 U.S. App.D.C. 35, 416 F.2d 791 (1969); Stevens v. Marks, 383 U.S. 234, 246 n. 11, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966). In making this decision adversely to the Government, we do note, however, that such decision is without prejudice to their making a subsequent and proper application in accordance with the procedural requirements of Section 2514.

## ORDER

And now, this 26th day of August, 1970, it is ordered that this Court's order of June 16, 1970, granting Stanford Frank immunity from prosecution and

compelling him to testify before the Grand Jury be and is hereby vacated; It is further ordered that the Government's petition to hold Stanford Frank in civil contempt is denied.