Opinion by
Packel, J.,
The appellant was found guilty of maliciously libeling two judges, a district attorney, an editor and chairman of a water authority, and a businessman and chairman of a sewer authority. Some samples of appellant’s statements are:
*455 “Ruble left the country, really, He’s spending Mifflin County money in Europe.”
» * *
“Brower is a perfect out-law.
“James H. Brower, president of the Lehman/Siegel ghost corporation, is a crook’s crook.
“Jim Brower Is a Super Crook.
“Maybe we should make Judge Lehman serve the sentences of those who he lets off illegally, Judge Lehman, Like that outlaw Lee Ziegler, took an oath to enforce the law, any more jokes????”
* * *
“The whores love Judge Lehman because he guarantees them a meal ticket, either by way of a relief check or nice support payments.
“Judge Lehman and Lee R. Ziegler will never give us our rights; we must take our rights from them.”
* * *
“Lehman lets Dick Ruble get away with horriable [sic] crimes. Lehman doesn’t know what an honest days’ work is; that is why he lets the filthy reliefers off so easy.”
•2* * *♦
“Judge Lehman and Ziegler have treacherously ignored the law, committed terriable [sic] crimes and sinned in the most unforgivable ways.”
« # *
“Dick Ruble is a traitor.”
» -* *
“We know the pipsqueak Brower was a draft-dodger.”
* * *
“Lehman is our sad, bad, glad, and mad Judge’s name; he refuses to display Old Glory in the Kangaroo Court Room.”
*456 “Our District Attorney Horace J. Culbertson, Paul S. Lehman, and Richard S. Ruble are all traitors; all three of these named men have sold America down the river.”
* # *
“This deals with his using his powerful position of Chairman of the water authority to collect bribes.”
• * «
The lower court charged the jury time and again that guilt could be found only if the statements were malicious and only if they were false. The appellant offered no testimony and there was no evidence that any of the statements were truthful.
At the outset we are confronted with the three to two opinion in Commonwealth v. Armao, 446 Pa. 325, 286 A. 2d 626 (1972) that our criminal libel legislation and a pertinent constitutional provision are of no force or effect because they do not comport with our federal constitutional guarantees concerning freedom of speech and freedom of the press. Since that opinion was by less than a majority of seven justices, comprising a full court, we believe that stare decisis does not bind us,[1] *457 particularly since important public interests are affected by its declaration of unconstitutionality.[2]
We have reviewed the federal decisions and conclude that they do not mandate the absolute elimination of criminal libel legislation. The line of federal civil cases, referred to in Armao, supra, from New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710 (1964) to Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S. Ct. 1811 (1971), make it crystal clear that causes of action are still maintainable for malicious libel. The only recent criminal libel case decided by the Supreme Court did not outlaw the criminal libel legislation of a state, Garrison v. Louisiana, 379 U.S. 64, 85 S. Ct. 209 (1964). It held only that, absent malice and falsity, a criminal conviction could not be sustained under the federal constitution. Thus the majority opinion pointed out that a criminal conviction could be based upon malice (379 U.S. at 75) : “The use of calculated falsehood, however, would put a different cast on the constitutional question. Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. At the time the First Amendment was adopted, as today, there were *458 those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration. Cf. Riesman, Democracy and Defamation: Fair Game and Fair Comment I, 42 Col. L. Rev. 1085, 1088-1111 (1942). That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which £are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . .’ Chaplinsky v. New Hampshire, 315 U.S. 568, 572. Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.”
An analysis of the Pennsylvania situation reveals that the constitutional provision[3] prohibits certain criminal libel convictions. It does not, however, purport to impose the bases for conviction. That it authorizes, inferentially, criminal libel legislation based upon negligence does not mean that the constitutional provision must be stricken.
*459 The Act of June 24, 1939, P. L. 872, §412, 18 P.S. §4412,[4] a codification of an 1860 codification, refers to a malicious or defamatory libel and makes no reference to negligence. That Act must, however, be read together with the Act of April 11, 1901, P. L. 74, §1, 19 P.S. §801.[5] It relates to candidates for, and holders of, public office. Like the constitutional provision referred to, it is in restrictive form and only carries an inference that convictions may be based upon negligent conduct. To the extent that either this Act or the Pennsylvania Constitution would permit a conviction based upon negligence, the conviction would have to be set aside in view of the federal constitution. Likewise, to the extent that Pennsylvania law would be construed to prevent the defense of truth, a conviction could not withstand constitutional attack.
The libel conviction in the instant case clearly deals with malicious and untruthful statements. This was the finding of the jury after the judge had repeatedly charged that there could be no finding of guilt unless they found both malice and untruthfulness.[6]
*460 Much might be said, and has been said,[7] about the undesirability of criminal libel legislation. For that reason the official draft of the Model Penal Code of the American Law Institute[8] omits the crime of libel. This determination, however, is a legislative function and this Court should not take it upon itself to eliminate the crime of libel whatever may be the predilections of its members.
With respect to the earlier quoted statements, in addition to many others published by the appellant, he Avas also convicted of violating the anonymous communications provision of The Penal Code, Act of June 24, 1939, P. L. 872, §414, 18 P.S. §4414.[9] He attacks its constitutionality but we find that we do not reach that point. This provision of The Penal Code is a reenactment of the Act of May 25, 1897, P. L. 85. In view of the nature of the provision involved, its heading and its history, there is little room for doubt that it was meant to cover communications the authorship of which was unknown. The appellant contends that the communications in this case were not anonymous, even though no signature was appended to the statements because their authorship was publicly known, they were serially numbered and were published in similar fashion for a long period of time. At oral argument it was conceded that the authorship was well *461 known. We believe that the essence of this crime is anonymity and the mere technical absence of a signature Avas not intended to be a violation of the statute.
Judgment of sentence in criminal action No. 21 is affirmed and judgment of sentence in criminal action No. 22 is reversed.
Watkins, J., would certify the case to the Supreme Court.

 Mr. Justice Eagen in Commonwealth v. Silverman, 442 Pa. 211, 218, 275 A. 2d 308, 312 (1971) pointed out in a footnote that: “The recorded opinion in Hosendorf, supra, did not express the views of a majority of the Court, and, therefore, is not decisional.” The distinction might be made that the Armao decision was that of a majority of the participating judges, whereas the Hosendorf opinion was not a majority opinion because two of the seven justices concurred in the result and two dissented. Nonetheless it would seem that the known certainty of the law, the basis for stare decisis, should stem from a determination by at least a majority of the full bench. In re Estate of Curzenski, 384 Mich. 334, 183 N.W. 2d 220 (1971) (4 to 3 decision by an 8 judge court) ; Sculthorp v. American Motors Corp., 4 Mich. App. 65, 143 N.W. 2d 767 (1966) (3 to 2 decision with 3 justices not sitting) ; Pollard v. Hill, 447 S.W. 2d 777 (Mo. App. 1969) (intermediate appellate court not bound by opinion of 4 judges of highest court when one judge con *457 eurred in the result and three dissented). Cf. Burak v. Com. of Pa., 339 F. Supp. 534 (E.D. Pa. 3972) (3 judge court).

 In Commonwealth ex rel. Margiotti v. Lawrence, 326 Pa. 526, 530, 193 A. 46, 48 (1937), the unanimous opinion of the Court quoted with approval the old and established rule stated by Cooley in Constitutional Limitations as follows: “. . . when a question involving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced .in, it is not only the right, but the duty, of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny.”

 Article I, Section 7: “. . . No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other eases.”

 “Whoever writes, prints, publishes or exhibits any malicious or defamatory libel, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, thereby exposing him to public hatred, contempt or ridicule, is guilty of libel, a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both.”

 “In all criminal prosecutions or indictments for libel, no conviction shall be allowed if the subject matter of the publication, whether contained in newspapers or otherwise, relates to candidates for public office or the official conduct of public officers, and is found to the satisfaction of the jury to be proper for public information or investigation and not to have been maliciously or negligently made. In all such cases the truth may be given in evidence to the jury.”

 Contrast Armao, supra, where the factual defense was the truth of the publication and the trial judge charged that “. . . the greater the truth, the greater the libel. . .” (Record, 24a).

 Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 924 (1963).

 See Model Penal Code, Tent. Draft No. 13, 1961, §250.7, Comments, at 44.

 “AVhoever, without appending his proper signature thereto, sends or causes to be sent to another, any written or printed communication or matter, which is either libelous, defamatory, scurrilous, or opprobrious, is guilty of a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment for not more than one (1) year, or both.”