## Martorano Appeal.

Argued June 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*John Rogers Carroll,* with him *Robert E. Gabriel,* and *Carroll and Gabriel,* for appellant.

*David Richman,* Assistant District Attorney, with him *Paul R. Michel,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, August 9, 1973:
Judgment of sentence affirmed. Opinion to follow.

---

OPINION PER CURIAM, September 19, 1973:

Appellant Raymond Martorano appeals from the order of May 4, 1973, entered by Judge Harry A. TAKIFF of the Court of Common Pleas of Philadelphia County, citing him for contempt of court and committing him to county prison for a period of six months or until he purges himself by testifying or until the expiration of the present investigating grand jury in Philadelphia.

Appellant was subpoenaed as a witness and sworn before the investigating grand jury on January 17, 1973. The grand jury is investigating the areas of illegal gambling operations and systematic attempts to corrupt law enforcement officers, among other things. On February 13, 1973, appellant appeared before the grand jury, but declined to answer any substantive questions concerning the areas under investigation,[1] invoking his privileges against self incrimination. Subsequently, on April 12, 1973, the District Attorney of Philadelphia and the Attorney General of Pennsylvania jointly petitioned the court below to grant appellant immunity pursuant to the Act of Nov. 22, 1968, P. L. 1080, No. 333, §1 et seq., 19 P.S. §640.1 et seq.

---

[1] The questions which appellant refused to answer included the following:

"Mr. Martorano, have you ever been engaged in an illegal gambling operation in Philadelphia?"

"Mr. Martorano, have you ever employed any other persons to assist you in an illegal gambling syndicate in Philadelphia?"

"Mr. Martorano, have you ever paid any money directly or indirectly to any member of the Philadelphia Police Department to protect your illegal gambling activities?"

"Have you ever paid any money directly or indirectly to any City Official or member of the judiciary in Philadelphia?"

Appearance of February 13, 1973, at n.t. 4-5.

Appellant filed an answer to the petition and a hearing was then conducted, without appellant participating, at which the court reviewed the transcript of appellant's February 13th appearance before the grand jury and heard argument by the district attorney as to the "need" for the granting of immunity. The court granted immunity and directed appellant to testify. On the same day, after consulting with counsel, appellant again appeared before the investigating grand jury. He continued his earlier refusal to testify, reasserting the constitutional grounds.

On May 1, 1973, the district attorney petitioned the court below to cite appellant for contempt. A hearing was held on May 4, and when appellant persisted in his refusal to answer any questions, the court cited him for contempt. The order was framed conditionally so that appellant could purge himself by testifying, the trial judge quite clearly indicating in his opinion that the court "concluded that the witness was in *civil* contempt of court for refusing to testify. . . ." (Emphasis added.) Appellant now appeals from that order.

### I.

Initially, we are faced with a jurisdictional question not, however, raised by the parties. The issue is whether the lower court's order is properly characterized as a civil contempt order or whether, under the Act, supra, it is necessarily an order for direct criminal contempt, from which appeal would be directly to our Supreme Court. Our decision on this question is prescribed by that Court's decision in *Riccobene Appeal*, 439 Pa. 404, 268 A. 2d 104 (1970), until that Court re-examines this question when properly called upon to do so. While the decision in *Riccobene* was three justices in favor of the majority opinion, one concurring in the result, and three dissenting, and despite the fact that the membership of the present Court is

different, in view of both the recentness of the decision and the jurisdictional question involved, it is inappropriate for us to strike out on our own here. See also *Commonwealth v. Mason*, 222 Pa. Superior Ct. 453, 295 A. 2d 103 (1972), concurring and dissenting opinion. We therefore take the liberty of quoting the *Riccobene* opinion on this issue, since we hold that decision to be controlling here.

The Court there reasoned, in denying Riccobene's contention that a civil contempt order was improper in circumstances similar to those here, as follows: "Riccobene urges that the sanction of *criminal* contempt *expressly* provided by the Act [See §640.5] *is exclusive,* and that his civil contempt sentence is thus beyond the authority of the Court. Because of the conditional nature of the contempt sentence which allowed Riccobene to purge himself of contempt and free himself by testifying before the Grand Jury, it is clearly civil contempt. Shillitani v. United States, 384 U.S. 364 (1966). As the Court pertinently said (pages 365, 368, 369-371): [T]he difficult question [is] whether a charge of contempt against a witness for refusal to answer questions before a grand jury requires an indictment and jury trial. In both cases, contempt proceedings were instituted after petitioners had refused to testify under immunity granted by the respective District Courts. . . . Both were found guilty and sentenced to two years' imprisoment, with the proviso that if either answered the questions before his sentence ended, he would be released. . . . *We hold that the conditional nature of these sentences renders each of the actions a civil contempt proceeding, for which indictment and jury trial are not constitutionally required.*

. . .

" 'We believe that the character and purpose of these actions clearly render them civil rather than criminal contempt proceedings. See Penfield Co. v.

Securities & Exchange Comm'n, 330 U.S. 585, 590 (1947). As the distinction was phrased in Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 449 (1911), the act of disobedience consisted solely "in refusing to do what had been ordered," i.e., to answer the questions, not "in doing what had been prohibited." And the judgments imposed conditional imprisonment. . . . When the petitioners carry "the keys of their prison in their own pockets," In re Nevitt, 117 F. 448, 461 (C.A. 8th Cir. 1902), the action "is essentially a civil remedy designed . . . to secure compliance with judicial decrees." ' Green v. United States, 356 U.S. 165, 197 (1958) (BLACK, J., dissenting).

. . .

"*The test may be stated as: what does the court primarily seek to accomplish by imposing sentence? Here the purpose was to obtain answers to the questions for the grand jury.*

" 'III

" '*There can be no question that courts have inherent power* to enforce compliance with their lawful orders *through civil contempt.* United States v. United Mine Workers, 330 U.S. 258, 330-332 (1947) (BLACK and DOUGLAS, JJ., concurring in part and dissenting in part) ; United States v. Barnett, 376 U.S. 681, 753-754 (1964) (GOLDBERG, J., dissenting). *And it is essential that courts be able to compel the appearance and testimony of witnesses.* United States v. Bryan, 339 U.S. 323, 331 (1950). *A grand jury subpoena must command the same respect.* Cf. Levine v. United States, 362 U.S. 610, 617 (1960). Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance. McCrone v. United States, 307 U.S. 61 (1939). The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings

absent the safeguards of indictment and jury, Uphaus v. Wyman, 364 U.S. 388, 403-404 (1960) (Douglas, J., dissenting), provided that the usual due process requirements are met.'

"In Brocker v. Brocker, 429 Pa., supra, the Court pertinently said (page 519) : 'The dominant purpose and objective of the Court's Order is the controlling factor in the determination of whether the contempt was civil or criminal. Not only is the dividing line between civil and criminal contempt sometimes shadowy or obscure, but the same facts or conduct may constitute or amount to both civil and criminal contempt.'

"To summarize: The power to commit for civil contempt and to punish petty criminal contempts summarily may be exercised by the Court, and the Constitutional right of trial by jury does not apply to such contempts. The right of trial by jury applies (a) only to serious crimes where imprisonment for more than six months is authorized, or (b) in cases where no maximum sentence is established by the Legislature but the punishment actually imposed exceeds six months' imprisonment. Baldwin v. New York, 399 U.S. 66, 90 S. Ct. 1886 (1970) ; Duncan v. Louisiana, 391 U.S. 145. See also, Bloom v. Illinois, 391 U.S. 194; Cheff v. Schnackenberg, 384 U.S. 373. Since appellant Riccobene was held and imprisoned for civil contempt, he may be released either (1) upon purging himself of his contempt by testifying before the Grand Jury, or (2) upon the discharge of the Grand Jury, or (3) upon the expiration of the six-month term of imprisonment, whichever first occurs. See Shillitani v. United States, 384 U.S., supra." 439 Pa. at 421-425.

Under the Riccobene standards, there can be no question that the court below properly intended to, and did impose a sentence for civil contempt from which an appeal was properly taken to this Court.

## II.

Appellant's substantive contentions here are that no hearing, as required by §640.1 of the Act[2] at which need for the grant of immunity was established, was held or that the hearing was not a full-scale, adversary proceeding at which appellant was allowed to participate, which he claims is required under the Act. We find his arguments unpersuasive, as did the court below.

The lower court's opinion dealt with appellant's contentions regarding the establishment of need and the type of hearing required at length, as follows: "At the hearing on the grant of immunity in this case this Court reviewed the testimony of the witness before the Grand Jury, the verified Petition of the Attorney General and the District Attorney and thereafter the witness's counsel was heard on argument. He then stated: 'MR. SULMAN: . . . What I presently am attacking, sir, is the fact that the Commonwealth has not within the Act established the need for this particular witness to testify before this Grand Jury. I believe their petition is just hearsay.' '

. . .

The Court, in response . . . [to an allegation by counsel that nothing in the petition for immunity was either related to any fact before the grand jury or directly

[2] The statute states, inter alia, that: "§640.1 Organized crime or racketeering; order to testify

If, in a proceeding relating to organized crime or racketeering before a court, grand jury or investigating body set up by legislative enactment or by order of the Governor, any person shall refuse to testify or to produce evidence of any other kind on the ground that his testimony or evidence may tend to incriminate him, that person may be ordered to give such testimony. The order to testify shall not be given except upon an order of court *after a hearing in which the attorney general has established a need for the grant of immunity, as hereinafter provided.*" (Emphasis added.)

asserted that appellant had any relevant knowledge], directed the attention of counsel to the fact that the proceeding pertains to an investigating grand jury and further that in addition to the matters disclosed in the Petition for Immunity and the transcript of the witness's interrogation before the Grand Jury, the Court had the benefit of an in camera disclosure of the scope of the inquiry to be addressed to the witness and the anticipated information sought to be elicited from him.

. . .

"The attack upon the present proceeding ignores the essential status of a person who is so immunized as the recipient of a benefit conferred. In our view, the grant of immunity is in derogation of the Commonwealth's right and the public interest in the prosecution of persons who may be guilty of crimes. . . . [It] should be granted sparingly and only under circumstances where the Court is of the opinion that there is a larger overriding public concern in the broad matters under investigation by the Grand Jury which outweigh the immediate interest in the witness who might otherwise be prosecuted for his actions.

"The establishment of 'need' must be proven to the satisfaction of the Court in the cautious and restrained exercise of the extraordinary benefit being allowed the immunized witness. As stated in Riccobene, supra at page 418: 'The basic purpose of the "need" requirement in the immunity statute is to assure that only those criminals whose testimony is vital to the Commonwealth will be immunized against punishment for their crimes. This is primarily a matter between the prosecuting agency and the Judge, and not for appellant's concern.'*

---

* Under somewhat related Federal immunity statutes, it has similarly been stated that the issue of 'need' is primarily one for the determination of the Judge and the United States Attorney, with little if any involvement of the person to be immunized: See

"This Court has determined on the basis of the information before it, that a need for obtaining the information which the witness possesses regarding bribery has been sufficiently averred and demonstrated to warrant the grant of immunity.

. . .

". . . Further, to require . . . public disclosure of the evidence and information supportive of the matters recited in the Petition would have been violative of the secrecy of the Grand Jury Proceedings. Additionally, such a requirement would be somewhat excessive in view of the prior in camera disclosure to the Supervising Judge which preceded the witness's appearance before the Grand Jury.

. . .

"[I]n Riccobene the 'hearing' and the 'need' requirements of the statute were found to be satisfied by the affirmation of the averments of the Petition and the court's consideration of the transcript of the Grand Jury examination of the witness whose immunity was prayed for, [since every inquiry by counsel on cross-examination beyond the Petition was objected to by the district attorney, sustained by the court, and affirmed by the Supreme Court].

. . .

"If the witness's counsel wished to challenge either 'hearing' or 'need', he had every opportunity to present any testimony or legal argument at the hearing held on the Petition. The Court asked counsel specifically (N. T. 32) if there was 'anything further'. Counsel for the witness answered in the negative."

We concur with the lower court's conclusions that need was shown by the district attorney here and that,

---

*Bursey v. U. S.*, 466 F. 2d 1059 (9th Cir. 1972) ; *U. S. v. Nelberger*, 460 F. 2d 290 (6th Cir. 1972) ; *In re Phillip Bart*, 304 F. 2d 631 (D.C. Cir. 1962) ; *In re Grand Jury Investigation*, 317 F. Supp. 792 (E.D. Pa. 1970). [Footnote in lower court's opinion.]

both logically and based on the authority of *Riccobene*, no full scale adversary proceeding was required. Since the basic purpose of both the "need" and "hearing" requirements is to protect the citizens of the Commonwealth, by assuring that immunity will not be improvidently granted so as to allow those guilty of crimes to escape punishment, the need hearing required under the Act *is* "primarily a matter between the prosecuting agency and the Judge, and not for appellant's concern." *Riccobene,* supra at 418. Certainly these two elected public officials will better protect the interests of the citizenry than a witness who already has refused to testify in order to avoid incriminating himself of a crime proscribed by the Commonwealth's citizens through their legislators' enactment of a criminal statute. Hence, appellant has no standing to object to the hearing held here.

The judgment of sentence of the court below is affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that his contempt conviction for refusal to testify before an investigating grand jury should be reversed because the lower court did not comply with the statutory requirements prior to granting him immunity from prosecution and ordering him to testify. The instant matter is not within our jurisdiction and should be certified to the Supreme Court which has exclusive appellate jurisdiction in cases of direct criminal contempt.[1] Although Judge Harry A. TAKIFF

---

[1] "The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following classes of cases:

. . .

(5) Direct criminal contempt in the courts of common pleas and other contempt proceedings in the courts of common pleas relating to orders which are appealable directly to the Supreme

held appellant in civil contempt following his refusal to testify with immunity before the grand jury, the statute provides: "Any person who shall refuse or decline to testify . . . after being granted immunity and ordered by the court *shall be guilty of criminal contempt.* . . ." (emphasis added).[2] Thus, this must be considered an appeal from a conviction for direct criminal contempt which is not within our jurisdiction.

The Act of November 22, 1968, P. L. 1080, No. 333, §1 et seq. (19 P.S. §640.1 et seq.) empowers the judge presiding over a grand jury investigating organized crime to grant immunity to a witness where the attorney general has established such a need.[3] In a dissenting opinion in *Riccobene Appeal,* 439 Pa. 404, 426-427, 268 A. 2d 104, 119 (1970), Justice Cohen examined a judge's power to grant immunity in an organized crime investigation:

"There is no question that if the Act of 1968 had not been passed and it is determined that a witness is rightfully asserting his privilege (as here) no sanctions for contempt, either civil or criminal could be imposed. The problem is to determine the effect of the immunity statute. Section 5 of the Act in unmistakable language states that 'Any person who shall refuse or decline to testify . . . after being granted immunity and ordered by the court, shall be guilty of criminal contempt. . . .' Without that statute, the court has no power, inherent

Court;" Act of July 31, 1970, P. L. 673, No. 223, art. II, §202 (17 P.S. §211.202).

[2] Act of November 22, 1968, P. L. 1080, No. 333, §5 (19 P.S. §640.5).

[3] Prior to this enactment, the judiciary had no power to grant immunity to a witness appearing before a grand jury *investigating organized crime.* There were, however, other provisions permitting a court to grant immunity to witnesses in grand jury investigations. See, *Commonwealth v. Butler,* 171 Pa. Superior Ct. 350, 357, 90 A. 2d 838 (1952) ; *Rosenberg Appeal,* 186 Pa. Superior Ct. 509, 515, 142 A. 2d 449 (1958).

or otherwise, to impose any penalties. Therefore, when the legislature enters this field in which courts had no power previously, courts can only be deemed to have the specific power granted to them in the statute. Courts may not exercise their normal inherent powers in this situation because they could not exercise them in the absence of the statute and the legislation does not give them what they otherwise did not possess. The legislature has occupied the field and has prescribed criminal contempt as the only permissible sanction. Certainly the statute might be more effective if civil contempt were a permissible sanction, but we cannot supply what the draftsmen have omitted."

Although a witness' refusal to testify following the grant of immunity is criminal contempt under this statute, the legislation does not indicate whether such a refusal is direct or indirect criminal contempt. Direct criminal contempt is misconduct taking place in the court's presence "or so near thereto as to interfere with its immediate business"; indirect criminal contempt is the violation of a court order occurring outside the court's presence. *Knaus v. Knaus,* 387 Pa. 370, 375, 127 A. 2d 669, 671 (1956); *Commonwealth v. Patterson et al.,* 452 Pa. 457, 308 A. 2d 90 (1973). Appellant's refusal to testify before the grand jury constitutes direct criminal contempt, for it occurred in the court's presence and interfered with the grand jury's immediate business.

Superior Court cases decided under the former state constitution and appellate jurisdiction acts support this conclusion: "Thus, when a witness refuses to testify before a grand jury, notwithstanding statutory immunity or constitutional protection, is brought before the court, is directed to answer on proper notice and refuses in open court to answer proper questions, a *criminal contempt* is committed in the presence of the court which may be punished summarily." *Common-*

*wealth v. Butler,* 171 Pa. Superior Ct. 350, 356, 90 A. 2d 838, 841 (1952) (emphasis added). Such a contempt is direct because "contempts occurring in the presence of the grand jury are considered as taking place in the presence of the court or so near thereto as to obstruct the administration of justice or interfere with its immediate business." *Rosenberg Appeal,* 186 Pa. Superior Ct. 509, 515, 142 A. 2d 449, 452-3 (1958). These rules with respect to the imposition of contempt are founded upon the common law. If refusing to testify before the grand jury is direct criminal contempt under the common law, it must be direct criminal contempt under a statute defining such action as criminal contempt. In light of the plain wording of the statute and these prior cases, the lower court erred in holding appellant in civil contempt. Once the appellant refused to testify, the presiding judge's only alternative was to hold him in direct criminal contempt.

This conclusion is in apparent conflict with Chief Justice Bell's affirming opinion in *Riccobene Appeal,* supra, which found that civil contempt may be imposed upon a witness who refuses to testify after being granted immunity before a grand jury investigating organized crime.[4] The Chief Justice interpreted *Shillitani v. United States,* 384 U.S. 364 (1966) as holding that every court has the inherent power to hold an uncooperative grand jury witness in civil contempt. *Shillitani,* however, does not require that a court hold a grand jury witness in civil contempt prior to imposing

---

[4] Chief Justice Bell's opinion was not adopted by a majority of the Supreme Court. Three Supreme Court Justices—Cohen, O'Brien, Eagen—took the view adopted herein that a witness' refusal to testify before the grand jury with immunity is direct criminal contempt. Two Justices—Roberts and Pomeroy—joined Chief Justice Bell. The seventh, Justice Jones—now Chief Justice —concurred in the result reached by the Chief Justice, but expresses no opinion on the issue raised herein.

criminal contempt; it only requires that a Federal Court "consider the feasibility of civil contempt" before finding a witness in criminal contempt. This requirement has never been specifically applied to state courts. *Baker v. Eisenstadt,* 456 F. 2d 382, 387 (1972) ; *United States v. DiMauro,* 441 F. 2d 428 (8th Cir. 1971). Furthermore, under the present facts the court would have had no power to hold the witness in contempt prior to the enactment of the statute in November 1968. Since that act which empowers the court to grant immunity also prescribes the penalty for failure to testify, the court is limited to holding the appellant in criminal contempt. These circumstances are distinguishable from *Shillitani* which was decided under a Federal Statute empowering the court to grant immunity and providing: "No witness shall be exempt under this section from prosecution for perjury or *contempt* committed while giving testimony or producing evidence under compulsion as provided in this section." Act of July 18, 1956, c. 629, Title II, §201, 70 Stat. 574 (18 U.S.C.A. §1406). By using the word "contempt", the Congress of the United States empowered the Federal Courts to hold recalcitrant grand jury witnesses in either criminal or civil contempt. The Pennsylvania Statute limits this Commonwealth's courts to imposing criminal contempt.

Appellant's refusal to testify before the grand jury following a grant of immunity constitutes direct criminal contempt. The Appellate Court Jurisdiction Act places exclusive jurisdiction over such appeal in the hands of the Supreme Court. Thus, this case should be certified to the Supreme Court.