Application of **UNITED STATES SENATE SELECT COMMITTEE ON PRESIDENTIAL CAMPAIGN ACTIVITIES.**
Misc. No. 70–73.

United States District Court,
District of Columbia.
June 12, 1973.

Samuel Dash, Chief Counsel, James Hamilton, Fred Thompson, Asst. Chief Counsel, Ronald D. Rotunda, Asst. Counsel, Washington, D. C., for the Senate Select Committee on Presidential Campaign Activities.

Archibald Cox, Special Pros., Philip Heymann, Asst. Special Pros., Earl J. Silbert, Seymour Glanzer, Donald Campbell, Asst. U. S. Attys., for the Watergate Special Prosecution Force.

Thomas Frohock, Washington, D. C., for American Broadcasting Co., Inc., amicus curiae.

Joseph DeFranco, New York City, for Columbia Broadcasting System, Inc., amicus curiae.

Howard Monderer, Washington, D. C., for National Broadcasting Co., Inc., amicus curiae.

Norman M. Sinel, Washington, D. C., for Public Broadcasting Service, amicus curiae.

## OPINION

SIRICA, Chief Judge.

The Court has today entered orders which will confer what is commonly termed "use immunity" on two witnesses who are scheduled to appear before the Senate Select Committee on Presidential Campaign Activities (Select Committee). The orders provide that should the witness refuse on Fifth Amendment grounds to give testimony as requested by the Select Committee, "use immunity" may be conferred by the Committee chairman. Thereafter, on pain of contempt, the witness will be required to fully answer the questions put to him and provide the information sought unless such testimony is otherwise privileged. The prospective witnesses, Jeb Stuart Magruder and John W. Dean, III, have not opposed entry of these orders. The Attorney General, however, as represented by Special Prosecutor Archibald Cox,[1] has objected to grants of immunity without attendant conditions limiting the publication of testimony. The Court, upon application of the Attorney General's representative, granted a 20-day delay in consideration of the Senate requests, and in the meantime asked the Select Committee and the Special Prosecutor to file written memoranda treating the question of judicial discretion under the applicable statute.[2] Specifically the Court asked whether a court might properly exercise any discretion to deny an immunity request of the legislative branch even though procedural prerequisites were met. The Court subsequently heard oral argument in the matter. Pursuant to the reasoning set forth below, the Court has concluded that in this case, its duties are purely ministerial, and that any attempted exercise of discretion on its part, either to deny the requests or to grant immunity with conditions, would be an assumption of power not possessed by the Court.

We are dealing with the series of statutes under Title 18 of the United States Code, beginning with § 6001, which control the granting of immunity to witnesses. The specific section here con-

---

1. Throughout these proceedings, the Court has considered the Special Prosecutor to be acting, for the purposes of his assignment, in the capacity of Attorney General.

2. A joint statement *amicus curiae* was also filed on behalf of four networks: American Broadcasting Companies, Inc., Columbia Broadcasting System, Inc., National Broadcasting Company, Inc. and Public Broadcasting Service.

strued is § 6005, titled "Congressional proceedings" and is set out below:

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before either House of Congress, or any committee, or any subcommittee of either House, or any joint committee of the two Houses, a United States district court shall issue, in accordance with subsection (b) of this section, upon the request of a duly authorized representative of the House of Congress or the committee concerned, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) Before issuing an order under subsection (a) of this section, a United States district court shall find that—

(1) in the case of a proceeding before either House of Congress, the request for such an order has been approved by an affirmative vote of a majority of the Members present of that House;

(2) in the case of a proceeding before a committee or a subcommittee of either House of Congress or a joint committee of both Houses, the request for such an order has been approved by an affirmative vote of two-thirds of the members of the full committee;

(3) ten days or more prior to the day on which the request for such an order was made, the Attorney General was served with notice of an intention to request the order

(c) Upon application of the Attorney General, the United States district court defer the issuance of any order under subsection (a) of this section for such period, not longer than twenty days from the date of the request for such order, as the Attorney General may specify.[3]

Prior to the effective date of § 6005 and its companion sections (December 15, 1970) the immunity of witnesses was controlled by at least 50 separate statutory provisions.[4] With the enactment of § 6001 et seq., however, all other such provisions have been repealed thereby bringing under one roof and standardizing for the first time federal immunity measures.[5]

---

3. § 6002, referred to in subsection (a) of § 6005, defines the practical import of immunity whether in a court, grand jury, legislative or administrative setting. § 6002 reads as follows:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
(1) a court or grand jury of the United States,
(2) an agency of the United States, or
(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

4. Hearings, Senate Subcommittee on Criminal Laws and Procedures, 91st Cong., 1st Sess. (March 26, 1969) at 281–288. [Hereinafter cited as Senate Hearings].

5. Though not relevant to the instant matter, one current exception should be noted. Title 18 U.S.C. § 2514, which allows United States Attorneys to seek immunity from prosecution for a witness for any "transaction, matter or thing" about which the witness may testify, the so-called "transaction immunity," has a repeal date of December 15, 1974, and is therefore still in force at the present time.

§ 6005 deals with "use" as opposed to "transaction" immunity. Transaction immunity may be simply described as that which precludes prosecution for any transaction or affair about which a witness testifies. Use immunity, by contrast, is a grant with limitations. Rather than barring a subsequent related prosecution, it acts only to suppress, in any such prosecution, the witness' testimony and evidence derived directly or indirectly from that testimony. Evidence obtained wholly independently of immunized testimony may serve as a basis for prosecuting the witness for activities and transactions including those covered in his own statements.

The question has naturally arisen as to whether use immunity adequately supplants one's Fifth Amendment right against self-incrimination. Following the Supreme Court's decision in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), in which a use immunity statute was struck down, it was for some time supposed that only transaction immunity could afford protection co-extensive with the privilege against self-incrimination. A later case, Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896), upheld the immunity concept (that of exchanging the right to silence for protection from prosecution) but dealt only with a transaction immunity statute. The Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), decision, however, implied that the traditional interpretation of *Counselman* was incorrect and that protection against the direct and derivative use of compelled testimony could adequately replace the Fifth Amendment privilege. Finally, last year, the Supreme Court sustained Title 18 U.S.C. § 6001 et seq. as constitutionally sound on its face. See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). For the purposes of the matter now under consideration, the Court considers *Kastigar* as definitively establishing the constitutionality of § 6005.

The model for what is now § 6005 originated with the National Commission on the Reform of Federal Criminal Laws (Commission).[6] At the time the Commission was pursuing its studies, the Senate Judiciary Committee was engaged in hearings on S. 30 (organized crime control bill) which included at Title II provisions treating the question of immunity in grand jury and court proceedings. The Commission later recommended to the President that a general and comprehensive use immunity statute be adopted which would be applicable in grand jury, court, legislative, and administrative proceedings. In April 1969, the President conveyed such a recommendation to the Congress, and on May 12, 1969, Senator McClellan for himself and Senators Ervin and Hruska introduced S. 2122 in the Senate and Congressmen Poff, Edwards and Kastenmeier[7] introduced a companion bill, H. 11157, in the House. These bills implemented the Commission's recommendation with no substantive changes as far as the provisions for congressional proceedings were concerned.[8] The Senate Judiciary Committee substituted

6. The Commission was appointed by the Congress in 1966 "to undertake a study of the Federal criminal laws and recommend improvements." The Commission consisted of twelve members: three appointed by the President, three Federal judges appointed by the Chief Justice, three Senators appointed by the President of the Senate, and three members of the House of Representatives appointed by the Speaker. See Senate Hearings at 280.

7. All three House sponsors were members of the Commission. Congressman Poff served as its Vice-Chairman.

8. As drafted by the Commission, the proposed statute read:

*Section (4). Immunity Before Congress*

(a) When the testimony or other information is to be presented to either House or a committee of either House or a joint committee of both Houses of Congress, the direction to the witness to testify or produce other information shall be issued by a United States District Court, upon application therefor by a duly authorized representative of the

S. 2122 for the original Title II of S. 30, and the House Judiciary Committee subsequently reported out the new version of S. 30, Title II. The bills were enacted without further amendment on October 15, 1970.[9]

In its Working Papers, the National Commission thoroughly explored the language and intent of what is now § 6005, and indeed anticipated the type of situation now before the Court. Both the House and Senate Committees relied heavily on the testimony of Commission members and adopted the Commission's recommendations concerning immunity without significant modification. Counsel for the Select Committee and for the Special Prosecutor have both made references to these Papers. For these reasons, the Court believes it appropriate to refer in the following discussion to the clarifying and interpretive language of the Commission's Working Papers.

### I.

On its face, § 6005 casts the role of the Court in terms of ministerial duty. The language is mandatory: ". . . a United States district court *shall issue,* . . . upon the request of a duly authorized representative of the House of Congress or the committee concerned, an order . . . ." (emphasis added). The statutory language imposes only two prerequisites or conditions,[10] both procedural, for issuing the request-

---

House or committee concerned, and subject to the requirements of this section.

(b) Before issuing the direction, the court must find that application was authorized, in the case of proceedings before one of the Houses of Congress, by affirmative vote of a majority of the members present of that House, or in the case of proceedings before a committee, by affirmative vote of two-thirds of the members of the full committee.

(c) Notice of the application for issuance of the direction shall be served upon the Attorney General at least ten days prior to the date when the application is made. Upon request of the Attorney General, the court shall defer issuance of the direction for not longer than thirty days from the date of such notice to the Attorney General.

See Senate Hearings at 292.

S. 2122, by comparison, was as follows:

§ 6005. Congressional proceedings

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before either House of Congress or any committee, or any subcommittee of either House, or any joint committee of the two Houses, a United States district court shall issue, in accordance with subsection (b) of this section, upon the request of a duly authorized representative of the House of Congress or the committee concerned, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this chapter.

(b) Before issuing an order under subsection (a) of this section, a United States district court shall find that—

(1) in the case of a proceeding before either House of Congress, the request for such an order has been approved by an affirmative vote of a majority of the Members present of that house.

(2) in the case of a proceeding before a committee or a subcommittee of either House of Congress or a joint committee of both Houses, the request for such an order has been approved by an affirmative vote of two-thirds of the members of the full committee; and

(3) ten days or more prior to the day on which the request for such an order was made, the Attorney General was served with notice of an intention to request the order.

(c) Upon application of the Attorney General, the United States district court shall defer the issuance of any order under subsection (a) of this section for such period, not longer than twenty days from the date of the request for such order, as the Attorney General may specify.

See Senate Report No. 91–617, 91st Cong., 1st Sess., (Dec. 16, 1969) at 7. [Hereinafter cited as Senate Report].

9. For a complete account of the legislative history see Senate Report at 55, 56.

10. It is taken as granted by the statute that: (1) the individual from whom the testimony is sought, has been or may be called to testify, (2) the witness refuses or will refuse to give testimony on the basis of his privilege against com-

ed order: (1) if the proceeding is before a House of Congress, the request for an immunity order must have been approved by a majority of the Members present; if the proceeding is before a committee, subcommittee, or joint committee, the request must have been approved by two-thirds of the full committee membership, (2) at least ten days prior to filing the immunity request with the court, the committee or House must have provided the Attorney General with notice of an intention to seek immunity for the named witness or witnesses. In short, judicial discretion cannot be found on the face of the statute.

It is significant also to note that when the immunity relates to congressional proceedings the Attorney General is deprived of the discretion he enjoys under other sections of the statute. For grand jury and court proceedings (§ 6003) and certain administrative proceedings (§ 6004) the Attorney General may deny permission to seek an immunity order from the Court. Although § 6005 permits the Attorney General to apply to the court for a 20-day extension in which the court "shall defer the issuance of any order," no veto power or other authority is bestowed.

■ A recourse to the legislative history of § 6005 for aid in defining the Court's role indicates that the drafters specifically intended the court, in normal circumstances, to grant immunity orders without regard to its own judgment or opinion. The Senate and House Reports contain almost identical statements on this point.

A court order must be obtained based on an affirmative vote of a majority of members present in a proceeding before either House or a two-thirds vote of the members of the full committee in a proceeding before a committee. Ten days' notice must be given to the Attorney General prior to

seeking the order. The court must defer issuance up to 20 days at the Attorney General's request. As in administrative proceedings, however, the Attorney General is not given veto power. *Nor is the court given any power to withhold the order if the factual prerequisites are met.* (Emphasis added).

See Senate Report at 146, and House Report No. 91–1549, 91st Cong., 2nd Sess. (Sept. 30, 1970) at 43.

The language of the Working Papers, though somewhat blunt, is clear. In speaking of what is now § 6005, the Papers state:

. . . [P]roblems both of constitutionality and of insufficiency of information for meaningful judicial scrutiny, have been averted by making the court's function a weak and paltry thing—ministerial, not discretionary in nature.

The draft statute, accordingly, in continuing the requirement of application to a United States district court, makes more clear than the present statute the intention that the court's function is not discretionary. The court "shall" issue the direction to testify subject to a finding that the procedural requirements concerning specified voting arrangements in Congress, and notice to the Attorney General, have been met.

Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. II (1970) at 1440. [Hereinafter cited as Working Papers].

Counsel have directed the Court's attention to two cases which discuss judicial discretion in the context of the predecessor statutes to § 6001 et seq. The first of these is Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). In *Ullmann*, a potential witness sought to have the Court re-

---

pulsory self-incrimination, (3) the request from the concerned House of Congress or committee is made through a duly authorized representative, and (4)

the proposed order indicates that the witness' privilege against self-incrimination is to be supplanted by the limited immunity conferred under § 6002.

ject a request for an immunity order put forth by the Attorney General. Although the Ullmann statute required the immunity order to be in the "public interest," the Court (per Justice Frankfurter) held that the judicial branch had no discretion to deny the order if the procedural prerequisites were met. Quoting District Judge Weinfeld, the Court stated that an interpretation giving the Court discretion would "raise a serious constitutional question under the doctrine of separation of powers." (350 U.S. at 433, 76 S.Ct. at 504).

A nondiscretionary function on the court's part, said Justice Frankfurter, would be within its proper judicial power and would not usurp the constitutional power of a coordinate branch, in this case the Executive. The second case, a decision by the Court of Appeals in this Circuit, construed a statute which again was phrased in terms less restrictive on the court than § 6005. In re McElrath, 101 U.S.App.D.C. 290, 248 F.2d 612 (1957), an *en banc* decision, involved a request for immunity by the Senate Committee on the Judiciary and its Internal Security Subcommittee to which the prospective witness objected. The statute involved would, on its face, have allowed far more discretion to the District Court than the present one. It provided only that the requested immunity order "may be issued upon application by a duly authorized representative of . . . the committee concerned." Judge Burger, speaking for four concurring judges, stated:

> The discretion of the District Court is limited at this stage to a determination of the procedural regularity of an application and does not embrace such issues as the scope of the inquiry of the Committee, the pertinency and relevancy of the questions propounded or the constitutionality of the statute. 101 U.S.App.D.C. at 295, 248 F.2d at 617.

If then, neither the Attorney General nor the court may deny a congressional application, the question naturally arises, "For what purpose does §

6005 require notice to the Attorney General and approval by the court?" Though the statute itself is silent here, the Working Papers again include a comprehensive discussion. With respect to the Attorney General, the Working Papers state at page 1440:

> In the special instance of congressional inquiries, in contrast to administrative proceedings, it would be virtually unthinkable to give the Attorney General the additional power of disapproval of conferment of immunity, because in a Teapot Dome-type congressional investigation the Attorney General himself would be the focus of the inquiry.

Nevertheless, the Commission and the Congress did recognize the seriousness of immunization against punishment for crime and the potential adverse effect the conferring of immunity might have on criminal law enforcement. It was with the intent of minimizing any prejudicial impact on present and future law enforcement plans that the provision requiring notice of intended immunization was adopted. It was expected that timely notice would allow the Attorney General to assess the effect of a grant of immunity on investigations or prosecutions and then, should he feel it necessary, communicate with the concerned House of Congress or committee to "lobby" for a modification of immunity plans. (Working Papers at 1406). The memorandum filed by the Special Prosecutor indicates that he has made use of this opportunity although to no avail, as yet. It was also anticipated that a period of time up to 30 days would permit the Attorney General to "insulate from the immunity grant any incriminating data already in his files prior to the witness' testimony." (Working Papers at 1406). Presumably, if such incriminating data is available to the Special Prosecutor in this case, he has taken advantage of the opportunity to "insulate" it. Thus, though he is accorded no right to be heard in court in opposition to an immunity request, the Attorney General is given some protection in his role as the

administrator of Federal law enforcement by the notice requirement of § 6005.

With regard to court approval, the Commission expressed some strong reservations. It suggested at page 1436 of the Working Papers, that Congress give serious consideration to eliminating the judicial role altogether. The basic objection to court participation concerned the constitutional "separation of powers" doctrine. The problem was highlighted in the *Ullmann* v. *United States* case cited earlier. To uphold an immunity statute which required use of the judicial process, the Supreme Court felt constrained to read the statute as giving courts no discretion to deny immunity, the reason being that the judicial function is a determination of "right" or "wrong" while a decision to grant immunity is not "right" or "wrong" but purely a matter of discretion. The Working Papers sum up the import of Ullmann thusly:

> Immunity is the fixed price which the government must pay to obtain certain kinds of information, and only. the government can determine how much information it wants to "buy" in the light of the fixed price. Viewed thusly, a court has nothing on which to base a determination whether a given immunity grant is "right" or "wrong," whether it should be made, or whether it should not be made. Indeed, for a court to attempt to make such a decision, or for Congress to attempt to confer such a role upon a constitutional court, would raise serious questions of separation of powers under article III, *i. e.*, conferment on a constitutional. court of a function not "judicial" in nature.

Working Papers at 1434–35.

An attempt to force upon the courts the necessity of second-guessing the propriety or wisdom of specific immunity requests would, perhaps unconstitutionally, put the courts "in the middle."

> An immunity grant is not a matter of right or wrong, but a discretionary governmental act. The Federal district court may of course scrutinize the record to make certain that the congressional request for an immunity order is jurisdictionally and procedurally well founded, and that the Attorney General has been notified. But if the Attorney General should oppose the congressional request for an immunity order solely because he feels it is "unwise," the court would have no constitutional or other legal basis for siding with the Congress, siding with the Attorney General, or making its own calculation of the degree of public need for the information, balanced against the loss of the possible opportunity to prosecute a possible criminal.

Working Papers at 1417.

All this is not intended to suggest, however, that the court is nothing but a rubber stamp. § 6005 clearly requires that it be a checkpoint for assuring proper compliance with the established procedures. The Commission has suggested additional functions as well which derive largely from the courts' inherent powers.

> A further supporting reason for continuance of the requirement of application to a district court is that it could conceivably be converted into a sort of declaratory judgment proceeding not on the wisdom of conferring immunity or no, but on the question of constitutional jurisdiction of Congress over the inquiry area, statutory (or resolution) jurisdiction of the particular agent of Congress over the inquiry, and relevance of the information sought to the authorized inquiry.

> . . . . .

> Under our decided cases concerning congressional investigations there are potentially four kinds of restraints of a jurisdictional nature which the courts may impose, in an appropriate proceeding. First, a court may review to ascertain whether the investigation falls within the total constitutional scope of the congressional in-

vestigatory power. Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1880); McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927); Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929). Second, a court may review to ascertain whether a committee investigation exceeds the scope of the authorizing resolution, or perhaps is wholly unauthorized. United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953). Third, a court may review to ascertain whether the testimony sought is constitutionally privileged under the fifth amendment's self incrimination clause, which is irrelevant in this immunity statute context, or is privileged under some other constitutional provision such as the first amendment. Although the Supreme Court has not yet allowed a congressional witness to shelter under the first amendment, it has been willing to take a look and has split five to four on the issue. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959); cf. Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). Fourth, a court may review to ascertain whether the testimony sought is relevant to the authorized inquiry. Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957); Deutch v. United States, 367 U.S. 456, 81 S.Ct. 1587, 6 L.Ed.2d 963 (1961).

Working Papers at 1441-42.

To this list might be added the sort of discretion which a court exercises in denying an immunity request because it believes that the statute compelling testimony may be unconstitutional as applied. (See e. g., In Re Grand Jury Witness Sara Baldinger, 356 F.Supp. 153 (C.D.Cal. 1973.) In the present circumstances, none of the above-noted situations are disclosed.

## II.

While the Special Prosecutor acknowledges that the Court cannot withhold entry of the immunity orders here at issue, he nevertheless asks the Court to make such orders conditional. The specific conditions recommended are listed from the Special Prosecutor's memorandum.

1. Requiring, as in the case of criminal trials, the exclusion of the broadcast media (radio and television), when an immunized witness is required to furnish self-incriminating testimony, at least in the absence of an express waiver by the witness and his counsel of any objection to such potentially prejudicial coverage.

2. Limiting the grant of an order directing the witness to testify before the Committee to testimony given in executive session.

3. Conditioning the grant of the Committee's application on the assurance that it will receive the testimony only in executive session and will not publicly release the transcript of the testimony or any summary of it pending completion of the Committee's investigation.

4. Supplementing one or more of the above by directing the witnesses not to discuss or comment upon their testimony with members of the press or with any persons other than their counsel, members of the Committee and its staff, and prosecuting officers of the Department of Justice.

5. Supplementing one or more of the above by conditioning the grant of immunity on an understanding that the Committee and its staff will not make public statements about the witnesses' testimony pending completion of the Committee's investigation.

In oral argument, counsel for the Special Prosecutor apparently abandoned most of the above recommendations and urged upon the Court a single restriction: that the immunity orders direct the witnesses to testify only outside the presence of television cameras and radio microphones, thus permitting them to assert a Fifth Amendment privilege based

on the type of news coverage given their testimony.

■ Insofar as the Special Prosecutor's proposals ask the Court to judge the wisdom of granting immunity to these witnesses or the appropriateness of coverage by the broadcast media, the foregoing discussion suffices to show that the Court lacks completely any power of intervention. Insofar as the proposals ask the Court to exercise inherent powers in the interest of preserving the rights of potential defendants, additional considerations forbid judicial interference with the Select Committee's investigation and procedures.

The Special Prosecutor has cited a variety of cases which highlight the sort of judicial protections which he seeks. Prominent among these are: Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), Miranda v. Arizona, 387 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), and Delaney v. United States, 199 F.2d 107 (1st Cir. 1952). As precedents for judicial intervention in legislative matters he cites such cases as: Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), and Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881).

These decisions, however, are not precedents for what the Special Prosecutor proposes. The one distinguishing feature found in each of the cases regarding fair trials and defendants' rights is the fact that indictments were extant and defendants identifiable. The Court here cannot confront any such "case or controversy." Counsel for the Special Prosecutor at the hearing represented to the Court that indictments in the matter being investigated by the Select Committee are sure to be forthcoming, although a time cannot be estimated, and that Mr. Magruder and Mr.

Dean would very probably be named as defendants in such indictments. To broadcast nationally the possibly self-incriminating testimony of Messrs. Magruder and Dean, compelled pursuant to the orders herein, would, asserts the Special Prosecutor, endanger (1) the ability of any persons named by the witnesses in their testimony to obtain a fair trial, (2) the validity of future indictments, and (3) the ability of the Government subsequently to prosecute the witnesses. The fact remains, however, that there are no indictments, no defendants, and no trials. However much the Court may sympathize with the Special Prosecutor's wish to avoid serious potential dangers to his mission, it cannot act on suppositions, and the Special Prosecutor himself has been unable to show where any court has so acted. The matter is simply not ripe for judicial action.

Where a court has indictments or trial proceedings pending before it, it can draw on a well-stocked arsenal of measures designed to preserve the integrity of proceedings and the rights of individuals. It may act to change venue, grant a continuance as in *Delaney, supra*, restrict extrajudicial statements as in United States v. Tijerina, 412 F.2d 661 (10th Cir. 1969), cert. denied 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969), control the courtroom as per Sheppard v. Maxwell, *supra,* etc. But even supposing that a court might be able to act in a premature situation such as the instant one, it is clear that the court could not go beyond administering its own affairs and attempt to regulate proceedings before a coordinate branch of government. The case authorities cited by the Special Prosecutor cannot sustain intervention in this situation under the immunity statutes. On the contrary, decisional law mandates a "hands-off" policy on the Court's part. A sampling of cases will suffice.

Delaney v. United States, 199 F.2d 107 (1st Cir. 1952), is a leading case involving pretrial publicity provoked by a congressional hearing. After Delaney

was indicted on matters relating to the administration of the Internal Revenue laws, he was subjected to adverse publicity by hearings dealing with tax matters conducted by the so-called King subcommittee. The Circuit Court reversed Delaney's conviction because of the District Court's failure to grant a continuance, but noted that this indictment could still stand and that, with an appropriate continuance, Delaney could have received a fair trial. The Court stated further:

> We mean to imply no criticism of the King Committee. We have no doubt that the committee acted lawfully, within the constitutional powers of Congress duly delegated to it. *It was for the committee to decide whether considerations of public interest demanded at that time a full-dress public investigation* [of Delaney.] 199 F.2d at 114. (emphasis supplied)

The Court emphasized that the *Delaney* case involved an individual already under indictment. In a statement that portends the present situation the Court said:

> We limit our discussion to the case before us, and do not stop to consider what would be the effect of a public legislative hearing, causing damaging publicity relating to a public official not then under indictment. Such a situation may present important differences from the instant case. In such a situation the investigative function of Congress has its greatest utility: Congress is informing itself so that it may take appropriate legislative action; it is informing the Executive so that existing laws may be enforced; and it is informing the public so that democratic processes may be brought to bear to correct any disclosed executive laxity. Also, if as a result of such legislative hearing an indictment is eventually procured against the public official, then in the normal case there would be a much greater lapse of time between the publicity accompanying the public hearing and the trial of the subsequently indicted official than would be the case

if the legislative hearing were held while the accused is awaiting trial on a pending indictment. 199 F.2d at 115.

In his concurring opinion in Hutcheson v. United States, 369 U.S. 599, 82 S.Ct. 1005, 8 L.Ed.2d 137 (1962) Justice Harlan observed:

> . . . [S]urely a congressional committee which is engaged in a legitimate legislative investigation need not grind to a halt whenever responses to its inquiries might potentially be harmful to a witness in some distinct proceeding . . . or when crime or wrong doing is disclosed. McGrain v. Daugherty, 273 U.S. 135; 179–180, 47 S.Ct. 319, 71 L.Ed. 580. 369 U.S. at 618, 82 S.Ct. at 1015.

> .  .  .  .  .  .

> Nor can it be argued that the mere pendency of the state indictment *ipso facto* constitutionally closed this avenue of interrogation to the [Congressional] Committee. 369 U.S. at 613, 82 S.Ct. at 1012.

The recent Supreme Court decision in Doe v. Macmillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) holds that public distribution by a congressional committee of libelous or actionable material may impose liability on persons outside the legislative branch, for example, those who do the publishing. Thus, as a practical matter, a committee might in some cases want to be satisfied with internal distribution of information so as not to subject others to liability. Nowhere in the decision, however, does the Court even hint that the judiciary has power to direct a congressional committee so to act.

It is apparent as well that a committee's legislative purpose may legitimately include the publication of information. As the Supreme Court stated in Watkins v. United States, 354 U.S. 178, 200, 77 S.Ct. 1173, 1185, 1 L.Ed.2d 1273 (1957):

> [There is a] power of the Congress to inquire into and publicize corruption, maladministration or inefficiency in

agencies of the Government. That was the only kind of activity described by Woodrow Wilson in *Congressional Government* when he wrote: "The informing function of Congress should be preferred even to its legislative function." (citation omitted). From the earliest times in its history, the Congress has assiduously performed an "informing function" of this nature.

See also Hearst v. Black, 87 F.2d 68 (D. C.Cir. 1936).

In conclusion, the Court finds that the Select Committee requests have met the two procedural requirements established by § 6005. The Court is, therefore, compelled to grant unconditionally the immunity orders sought. Inasmuch as the Court is without discretion in this matter, it is not invited to comment on the wisdom or unwisdom of granting immunity in this case or to express its opinion on the desirability or undesirability of implementing the Special Prosecutor's proposals. To comment would be not only gratuitous but graceless. The Court's decision and action, therefore, cannot be interpreted as anything more than the Court acting as it is required by the law to act.